First Division

June 29, 2001 

No. 1-99-1676 

IN RE MARRIAGE OF:
 ) Appeal from the

) Circuit Court of

MARK BEYER, 
 ) Cook County.

Petitioner-Appellant,
 
 )
 

) 

v. ) No. 91 D 4461

) 

NANCY PARKIS, f/k/a 
 ) Honorable

NANCY BEYER, 
) James J. Gavin

Respondent-Appellee. 
) Judge Presiding

) 

)

)

)

Justice Tully delivered the opinion of the court:

Petitioner
, Mark Beyer,
 appeals from the circuit court's order holding him in indirect civil contempt and subjecting him to a period of incarceration for refusing to pay $19,0000 in interim attorney fees to respondent, Nancy Beyer, in violation of the circuit court's order. The circuit court granted respondent's petition for fees, pursuant to section 501(c-1) of the Illinois Marriage and Dissolution Act (Dissolution Act) (750 
ILCS 501(c-1) (West 1999))
, in the course of an action brought by respondent to vacate a judgment for dissolution of marriage. In reaching its determination, the court relied upon information contained in the petition, response and attached affidavits, but 
did not hold an evidentiary hearing.
 
 
On appeal, petitioner contends the circuit court was without statutory authority to award fees under section 501(c-1) because this provision applies exclusively to pre dissolution decree proceedings, while section 508(a) (750 
ILCS 508(a) (1999))
, which allows for an evidentiary hearing prerequisite to an award of fees, is the only mechanism to obtain fees in a post decree proceeding.  In the alternate, petitioner contends that the application of section 501(c-1) to post decree proceedings is unconstitutional, and that  respondent's petition for fees was insufficient to support an interim award.
 
This court 
has jurisdiction pursuant to Supreme Court Rule 304(b)(5) (155 Ill.2d R. 304(b)(5)), which allows for the appeal of orders of contempt imposing monetary or other penalties.
 For the reasons set forth below, we affirm the circuit court's order granting the petition for fees, and vacate the circuit court's order holding petitioner in contempt.

Background
  

On December 15, 1998, respondent, Nancy Beyer (Nancy) filed a motion to vacate a judgment for dissolution of marriage, entered on July 22, 1993, pursuant to section 2-1401 of the Illinois Code of Civil Procedure (Code) (735 ILCS 5/2-1401) (West 1998)). In her petition, Nancy alleged the marriage settlement agreement, incorporated into the dissolution judgment, was procured by fraud, in that, Mark Beyer (Mark) failed to disclose certain assets of the marriage, namely, an ownership interest in two gas stations and lottery proceeds totaling $289,0000, which

were not considered in determining Nancy's maintenance and support for the parties' two minor children. On October 2, 1998, Nancy filed a petition, pursuant to section 501(c-1),
 seeking interim attorney's fees from Mark in an amount comparable to the fees Mark paid to his own attorney. In an attached affidavit, Nancy represented she was without any financial resources to pay attorney's fees to pursue the action, while Mark had access to vast sources of income derived from the sale of one gas station, the operation of another gas station, and extensive lines of credit with financial institutions based on these assets.  In an attached affidavit, Nancy's counsel represented that Nancy had incurred $13,701.25 in attorney's fees in connection with the action to vacate the judgment, would likely incur an additional $15,000
 in fees, because substantial discovery and depositions were necessary, and was without the financial ability to pay either her outstanding or prospective fees. Attached to the petition was also a financial disclosure affidavit setting forth Nancy's and the children's income and expenses.  Mark moved to dismiss the petition pursuant to section 2-615 of the Code, on the basis the petition failed to set forth sufficient facts to support an award of fees, which motion the court denied.  Mark thereafter filed a response to the petition, representing that he had paid his attorney $18,977.50  in fees and costs, but neither admitting nor denying his ability to pay fees, demanding strict proof thereof. Mark did not present a counter affidavit or financial disclosure statement with his response.
(footnote: 1)  On February 3, 1999, after a hearing at which counsel for both parties appeared and argued, the circuit court granted Nancy's petition and ordered Mark to pay $19,000 of her attorney's fees. In reaching its determination, the court stated it relied upon the allegations in the petition and the response, in relation to the relevant factors set forth under section 501(c-1)(1). On February 23, 1999, Nancy filed a petition for rule to show cause why Mark should not be held in contempt of court because of his continuing refusal to pay the interim fees. On March 18, 1999, Mark brought a motion to reconsider the judgment granting the interim fees, arguing the circuit court lacked authority to award fees under section 501(c-1), which the circuit court denied.  On April 9, 1999, Nancy filed a second petition for rule to show cause why Mark should not be held in contempt of court. On May 18, 1999, the circuit court found Mark in contempt for failing to pay the fees and sentenced Mark to a period of incarceration not to exceed 180 days. Upon posting a bond, Mark obtained a stay of judgment pending appeal.  

Discussion

Petitioner initially contends that a plain reading of section 501(c-1) reveals the legislature intended this provision to apply only in pre dissolution decree proceedings, while a plain reading of section 508(a) indicates this provision was intended as the exclusive means to recover attorney's fees in a post dissolution decree proceeding.  Alternately, petitioner maintains that even if section 501(c-1) applies in post decree litigation, its application in that context is unconstitutional. Because resolution of this appeal hinges on issues of statutory construction and constitutionality, our standard of review is 
de novo.
  
E & E Hauling, Inc. v. Ryan
, 306 Ill.App.3d 131, 136 (1999). 

In construing a statute, the goal of the court is to effectuate the legislature's intent.  
People v. Pullen
, 192 Ill.2d 36, 42 (2000).
  To this end, a court may consider the reason and necessity for the statute and the evils it was intended to remedy, and will assume the legislature did not intend an absurd or unjust result
. 
Pullen
, 192 Ill.2d at 42.
  Any inquiry into legislative intent, however, must begin with the language of the statute, which is the surest and most reliable indicator of legislative intent.  
Pullen
, 192 Ill.2d at 42.
  Under the guise of construction, a court may not supply omissions, remedy defects, annex new provisions, substitute different provisions, add exceptions, limitations, or conditions, or otherwise change the law so as to depart from the plain meaning of language employed in the statute.  
Superior Structures Co. v. City of Sesser
, 292 Ill.App.3d 848, 852 (1997). 
If the language of the statute is clear, its plain and ordinary meaning
 must be given effect without resorting to other aids of construction. 
In re Marriage of Mitchell
, 181 Ill.2d 169, 173 (1998).

On June 1,1997, the legislature amended the Dissolution Act, thereby creating a new regime governing the award of attorney's fees.  See Pub. Act 89-712
, eff.  June 1, 1997.  
 Prior to amendment, section 508 alone governed attorney's fee awards, including "temporary" fee awards, and provided in pertinent part:

" (a) The court from time to time, after due notice and hearing, and after considering the financial resources of the parties, may order any party to pay reasonable attorney's fees necessarily incurred or, for the purpose of enabling a party lacking sufficient financial resources to obtain or retain legal representation, expected to be incurred by any party, which award shall be made in connection with the following:***

(4) The maintenance or defense of a petition brought under Section 2-1401 of the          Code of Civil Procedure seeking relief from a final order or judgment under              this Act *** "    750 ILCS 5/508(a) (West 1996).

    

Although section 501 recognized certain forms of  "temporary relief" which could be obtained  through the submission of petitions and affidavits, in the absence of an evidentiary hearing, and without prejudice to later modification, attorney's fees were not 
one of these. 750 ILCS 5/501 (West 1996). In order to obtain attorney's fees under the "old" version of 508, therefore, an evidentiary hearing was necessary.   

The 1997 amendments changed this, however, introducing a separate, independent  provision to govern "temporary" or "interim" fee awards, section 501(c-1), and reconfiguring section 508(a) into an umbrella provision which links the separate statutes on attorney's fees under the Dissolution Act. 
As amended, section 508(a) now reads:

"  (a) The court from time to time, after due notice and hearing, and after considering the financial resources of the parties may order any party to pay 
a reasonable amount of his own or the other party's costs and attorney's fees. Interim attorney's fees and costs may be awarded from the opposing party, in accordance with subsection (c-1) of section 501. At the conclusion of the case, contribution to attorney's fees and costs may be awarded from the opposing party in accordance with subsection (j) of 503. Fees and costs may be awarded to counsel from a former client in accordance with subsection (c) of this Section
. 
Awards may be made in connection with the following
: *** 

(4) The maintenance or defense of a petition brought under Section 2-1401 of the Code of Civil Procedure seeking relief from a final order or judgment under this Act. ***" 750 ILCS 508(a) (West 1997).

  

As amended, section 501, in turn, provides:

"Temporary Relief. 
In all proceedings under this Act
, temporary relief shall be as follows:***

     
(c-1) As used in this subsection (c-1), "interim attorney's fees and costs" means attorney's fees and costs assessed from time to time while a case is pending, in favor of the petitioning party's current counsel, for reasonable fees and costs either already incurred or to be incurred, and "interim award" means an award of interim attorney's fees and costs. Interim awards shall be governed by the following:

(1) Except for good cause shown, a proceeding for (or relating to) interim fees and costs shall be nonevidentiary, summary in nature, and expeditious. When a party files a petition for interim attorney's fees and costs supported by one or more affidavits that delineate relevant factors, the court (or hearing officer) shall assess an interim award after affording the opposing party a reasonable opportunity to file a responsive pleading. A responsive pleading shall set out the amount of each retainer or other payment or payments, or both, previously paid to the responding party's counsel by or on behalf of the responding party. In assessing an interim award the court shall consider all relevant factors, as presented, that appear reasonable and necessary, including: 

(
A) the income and property of each party, including alleged marital property within the sole control of one party and alleged non-marital property within access to a party;

(B) the needs of each party;

(C) the realistic earning capacity of each party;

(D) any impairment to present earning capacity of either party, including age and physical and emotional health;

(E) the standard of living established during the marriage;

(F) the degree of complexity of the issue, including custody, valuation or division (or both) of closely held businesses, and tax planning, as well as reasonable need for expert investigations or expert witnesses, or both;

(G) each party's access to relevant information;

(H) the amount of the payment or payments made or reasonably expected to be made to the attorney for the other party; and

(I) any other factor that the court expressly finds to be just and equitable.

(2) Any assessment of an interim award (including one pursuant to an agreed order) shall be without prejudice to any final allocation and without prejudice as to any claim or right of either party or any counsel of record at the time of the award
. 
Any such claim or right may be presented by the appropriate party or counsel at a hearing on contribution under subsection (j) of section 503 or a hearing on counsel's fees under subsection(c) of Section 508. 
Unless ordered by the court at the final hearing between the parties or in a hearing under subsection (j) of 503 or subsection (c) of 508, interim awards, as well as the aggregate of all other payments by each party to counsel and related payments to third parties shall be deemed to have been advances from the marital estate.
 Any portion of an interim award constituting an overpayment shall be remitted back to the appropriate party or parties or, alternatively, to successor counsel, as the court determines and directs, after notice.

(3) In any proceeding under this subsection (c-1), 
the court (or hearing officer)shall assess an interim award against an opposing party in an amount necessary to enable the petitioning party to participate adequately in the litigation, upon findings that the party from whom attorney's fees and costs are sought has the financial ability to pay reasonable amounts and that the party seeking attorney's fees and costs lacks sufficient access to assets or income to pay reasonable amounts. 
In determining an award, the court shall consider whether adequate participation in the litigation requires expenditure of more fees and costs for a party that is not in control of assets or relevant information.
 Except for good cause shown, an interim award shall not be less than payments made or reasonably expected to be made to the counsel for the other party.
 If the court finds that both parties lack financial ability or access to assets or income for reasonable attorney's fees and costs, the court (or hearing officer) shall enter an order that allocates available funds for each party's counsel, including retainers or interim payments, or both, previously paid, in a manner that achieves substantial parity between the parties. 

(4)The changes to this Section 501 made by this amendatory Act of 1996 apply to   cases pending on or after June 1, 1997, except as otherwise provided in Section 508.

(d) A temporary order entered under this Section:

(1) does not prejudice the rights of the parties or the child which are to be adjudicated at subsequent hearings in the proceeding;

(2) may be revoked or modified before final judgment, on a showing by affidavit and upon a hearing; and

(3) terminates when the final judgment is entered or when the petition for  dissolution of marriage or legal separation or declaration of invalidity of marriage    is dismissed." (emphasis added)
 750 ILCS 5/501 (West 1997).

In amending sections 508(a) and 501(c-1), the legislature also amended section 102 of the Dissolution Act, which sets forth the purpose and rules of construction under the Act. Prior to amendment, section 102 provided, in pertinent part:

 "This Act is to be liberally construed and applied to promote its underlying purposes, which are to: *** 

(5) make reasonable provisions for spouses and their children during and after litigation;***" 750 ILCS 102(5) (West 1996).

As amended, section 102 now reads: 

"This Act is to be liberally construed and applied to promote the underlying purposes, which are to: ***

(5) make reasonable provision for spouses and minor children during and after litigation, 
including provision for the timely awards of interim fees to achieve substantial parity in the parties access to funds for litigation costs
; ***" 750 ILCS 5/102(5) (West 1997).  

      

A
s an indication that section 501(c-1) was intended to apply only in pre dissolution decree proceedings, petitioner points out that several of the factors listed under 501(c-1)(1) are applicable only in a pre dissolution decree setting, most notably, section 501(c-1)(1)(A), the parties' access to "alleged marital property" and "alleged non-marital property."  As further indicia of  this intent, petitioner notes the language of section 501(c-1)(2) creates a presumption that "interim awards*** shall be deemed to have been advances from the marital estate"; a
 presumption which can only operate prior to the entry of a dissolution decree. 

The problem with this proposed construction is that it ignores the plain language of the statue and concentrates only on limited language excised from the context of the statute as a whole. 
 The most compelling evidence that the legislature intended 501(c-1) to apply in post decree proceedings, however, is the express language of section 501 itself, which indicates that  "temporary relief," including "interim attorney's fees," is available in "all proceedings" under the Dissolution Act.  Further, section 501(c-1) must reasonably be understood in view of the concomitant changes to 
section 508(a). Section 508(a), when read as an integrated whole, expressly indicates that "interim attorney's fees and costs" may be awarded "in accordance with subsection (c-1) of section 501" and in connection with "the maintenance or defense of a petition brought under Section 2-1401 of the Code of Civil Procedure seeking relief from a final order or judgment under this Act."
  This construction, we note, further agrees with the amended language of section 102(5), which defines the goal of interim awards broadly as "
substantial parity in the parties access to funds for litigation costs" 
both "during and after litigation
." 

Although petitioner is correct that some of the factors listed under 501(c-1)(1) would be irrelevant in a post decree proceeding, we note the statute does not mandate consideration of each and every factor listed, only the "relevant factors, as presented, that appear reasonable."
 Similarly, although the language of section 501(c-1)(2) creates a presumption that "interim awards" are to be deemed "advances from the marital estate" this is presumption is qualified with the prefatory language, "unless ordered by the court at the final hearing between the parties or in a hearing under subsection (j) of 503 or subsection (c) of 508."
 
 Ideally, any judicial inquiry into legislative intent should begin and end with a plain reading of the statute.
 Such a situation is presented here, as the plain language of section 501(c-1), as well as section 508(a), is unambiguous. Under a plain reading of the statute, we conclude the legislature intended section 501(c-1) to apply in post decree proceedings. 

Having determined that section 501(c-1) applies in post decree proceedings, we still must address whether its application in that context is constitutional. While petitioner's brief is unclear as to whether his constitutional attack on section 501(c-1) is brought under substantive due process or procedural due process,  petitioner appears to contend that in a post decree proceeding section 501(c-1): (1) violates substantive due process because it is an overly broad restraint on non marital property, and (2) violates 
procedural 
due process because it does not afford a party the right of an evidentiary hearing before taking non marital property.

In evaluating a substantive due process claim concerning non fundamental rights, the court applies the "rational basis test." 
Kaufman, Litwin & Feinstein v. Edgar
, 301 Ill.App.3d 826, 836 (1998). Under this test, the court must determine whether the legislation has a reasonable relationship to the public interest sought to be protected and whether the means the legislature adopted to achieve its goals reasonably related to such goals. 
Kaufman
, 301 Ill.App.3d at 836.

Previously, i
n 
Kaufman
, this court examined the constitutionality of section 501(c-1), under the rubric of substantive due process. Applying the rational basis test, the court found section 501(c-1) to be facially constitutional, rejecting plaintiff's claim the statute violated substantive due process by depriving lawyers of the right to keep fees they had earned.  
Kaufman
, 301 Ill.App.3d at 836.
  Still, the court noted its holding would not preclude a later finding that section 501(c-1) was unconstitutionally applied under particular circumstances.  
Kaufman
, 301 Ill.App.3d at 836.
  
In this case, because we are presented with a constitutional attack on a different aspect of the statute than was presented in 
Kaufman
, 
we engage in an independent analysis under substantive due process. 

Here, the crux of p
etitioner's substantive due process claim is that section 501(c-1), as it applies in post decree proceedings, is analogous to the statute at issue in 
Messenger v. Edgar
, 157 Ill.2d 162 (1993), which the Illinois Supreme Court found unconstitutional under a substantive due process analysis.
 
 In 
Messenger
, the statute in question
 was section 501.1(a)1 of the Dissolution Act,
 which created an automatic stay prohibiting spouses from transferring or disposing of any property, both marital and non marital property, upon the filing of a dissolution action
. 
Messenger
, 157 Ill.2d at
 167-69.  Applying the rational basis test, the Supreme Court found that the statute was not a rational means of accomplishing its stated goal, preventing the dissipation and concealment of marital assets because it imposed an automatic stay restraining not only martial property, but also non marital property, which the other spouse could in no way lay claim to.  
Messenger
, 157 Ill.2d at
 176-77.
 
 

Contrary to petitioner's assertion, we do not find
 section 501(c-1) shares the same constitutional infirmity as the statute in 
Messenger
.
  In enacting section 501(c-1), the legislature's goal was to level the playing field by equalizing the parties litigation resources where it is shown that one party can pay and the other party cannot. 
In re Marriage of DeLaraco
, 313 Ill.App. 3d 107, 113 (2000).  Essentially the same goal underlies section 508(a): to equalize the relative positions of the parties before the court by shifting
 liability for attorney fees, thereby diminishing the advantage one party may have over the other in the presentation of a case due to a disparity in their respective financial resources.  
Lee v. Lee
,
 302 Ill.App.3d 607, 612 
(1998).  Here, petitioner acknowledges section 508(a), in permitting liability for attorney's fees to be reallocated between the parties in post decree actions, is valid a means rationally related to a legitimate public objective. Petitioner's attack on section 501(c-1) is therefore directed primarily against the means adopted, rather than the legitimacy of the statute's public purpose. 

As distinguished from section 508(a), section 501(c-1) streamlines the method by which a financially disadvantaged party may obtain attorney's fees during the pendency of litigation. 
 By eliminating the hurdle of an evidentiary hearing in most cases, section 501(c-1) limits the ability of a party in a financially advantageous position from using the other party's lack of adequate funds as tactical tool, and allows an economically disadvantaged party to retain counsel in a timely fashion. See 
A General Explanation of the "Leveling the Playing Field" in Divorce Litigation Amendments
, 11-SEP CBA Rec.32 (1997).  Section 501(c-1), unlike section 508(a), also presumes to equalize the parties' access to litigation resources, creating a rebuttable presumption that "an interim award shall not be less than the payments made or expected to be made to the counsel for the other party."  750 ILCS 501(c-1)(3) (West 1997). 
Still, this presumption can only come into play once the party seeking fees demonstrates an inability to pay fees and the ability of the other party to do so; this being the same burden a party seeking fees must sustain when bringing a petition under section 508(a).
 By allowing interim awards pursuant to summary procedures, yet also allowing for the modification of awards before a final hearing, section 501(c-1) attempts to effect an equitable compromise between two competing concerns. On the one hand, by permitting underlying claims to proceed towards a determination on the merits, without a protracted sub- trial on fees at the outset, section 501(c-1) prohibits a financially advantaged party from  "stringing out" the litigation so as to force a financially disadvantaged party into ceding valid claims.  See 
A General Explanation of the "Leveling the Playing Field" in Divorce Litigation Amendments
, 11-SEP CBA Rec.32(1997); See also,  "
Leveling the Playing Field in Divorce: Questions and Answers About the New Law
, 85 Ill.Bar Journal 410-11 (1997). 
 On the other hand, in recognition that interim awards are truly a form of "temporary relief,"
 and that facts and circumstances change and develop in course of litigation, section 501(c-1) still allows for the modification or revocation of any award. 
11-SEP CBA Rec.32-33.

Unlike the statute in 
Messenger
,  which imposed a sweeping restraint on all non martial assets for purposes of  preventing the dissipation of marital assets, however, s
ection 501(c-1) specifically avoids the problem of over breadth 
by providing that any over payment of fees, whether derived from marital or non marital property, can be ordered to be remitted back to a party. 
See,1 H. Gitlin, 
Gitlin on Divorce
 § 19-8
, at 92 (2d ed. supp. 1997).  
Further, unlike the statute in 
Messenger
, section 501(c-1) does not operate indiscriminately or automatically to restrain all non marital property.  Rather, for a party to be compelled to give up non marital assets to pay another party's fees, a genuine disparity in the parties' respective access to financial assets first must be demonstrated, as would prevent one party from participating equally in pending litigation. Any restraint on non marital property resulting under section 501(c-1), moreover, remains 
a product of judicial discretion, rather than the mechanical application of the statute, as a judge familiar with case must ultimately determine what if any award is necessary to allow both parties to participate equally.
 
Further, in a given case, it is the judge too who must determine whether expedited summary procedures are even appropriate, or whether an evidentiary hearing is necessary to making an informed determination. 

Statutes carry a strong presumption of constitutionality, and 
the party challenging the constitutionality of a statute bears the burden of rebutting that presumption. 
Lulay v. Lulay
, 193 Ill.2d 455,
 470 (2000)
.
 Whether a statute is wise is a different question from whether a statue is constitutional. 
Village of Schaumburg v. Doyle
,
 277 Ill.App.3d 832, (1996).
  Here, we cannot say that the means adopted by the legislature to level the playing field during pending litigation, under section 501(c-1), are unreasonable or over broad as applied in post decree proceedings.

Petitioner argues separately that section 501(c-1) as it applies in post decree proceedings violates procedural due process because it allows the taking of non marital property without affording the right of an automatic evidentiary hearing.  Again, it is not clear from petitioner's brief whether his constitutional attack is a facial attack on the statute or an attack on the statute as it applied to him in this case. Still, the record indicates that petitioner never requested an evidentiary hearing or argued there was good cause for a hearing, and therefore waived that right. See  
In re Marriage of McHenry
, 
 292 Ill.App.3d 634, 643 (1997).
 Under these circumstances, we must assume petitioner's procedural due process attack on the statute is facial in nature.  

Procedural due process claims concern the constitutionality of the specific procedures employed to deny a person's life, liberty or property.  
Segers v. Industrial Comission
,
191 Ill.2d 421, 434 (2000).
 
 
Procedural due process is meant to protect persons from the mistaken or unjustified deprivation of life, liberty or property
, not from the deprivation itself. 
Segers
,
191 Ill.2d at 434. 
To survive a facial challenge, the procedures a statute incorporates must at least be adequate to authorize the deprivation with respect to some of the persons subject to it.  
Matter of
 Perona
, 
294 Ill.App.3d 755, 762 (1998). At a minimum, due process requires that a deprivation of property cannot occur without providing notice and an opportunity for a hearing appropriate to the nature of the case.  
City of Marseilles v. Union Bank
,
 317 Ill.App.3d 931,
 (2000).  
In evaluating procedural due process claims, the court uses a three part test, under which the court (1) asks the threshold question whether there exists a liberty or property interest which has been interfered with by the State, (2) examines the risk of an erroneous deprivation of such an interest through the procedures already in place, while considering the value of additional safeguards, and (3) addresses the effect the administrative burden would have on the state's interest.  
Segers v. Industrial Commission
,
 191 Ill.2d 421, 434 (2000). 

Looking to the first of the due process considerations above, it is clear that petitioner, and any person who is compelled to pay an opposing party's attorney's fees pursuant to section 501(c-1) has their property interfered with by the State. As to the second element of the due process test, which requires us to examine the procedures already in place under the statute, we find the court's analysis in 
Kaufman
 to be pertinent.

In 
Kaufman,
 the court was presented with a facial challenge to section 501(c-1) under procedural due process.
 
There, 
plaintiff argued that section 501(c-1) violated procedural due process because a lawyer who had already earned fees could be forced to return fees to the marital estate without the opportunity of a fair hearing. 
Kaufman
, 301 Ill.App.3d at 836.
 The court rejected this argument, finding section 501(c-1) to be constitutional. Citing the Illinois Supreme Court's decision in, 
Raintree Health Care Center v. Illinois Human Rights Commission
, 173 Ill.2d 469 (1996) the court noted that nonevidentiary hearings have been held to be procedurally proper means of deciding fee petitions, as long as the decision maker can determine, from the evidence presented in the petition and answer, what amount would be a reasonable award of fees and the opposing party has an opportunity to be heard. 
Kaufman
, 301 Ill.App.3d at 837.
  The court further observed that section 501(c-1) incorporates the basic protections of procedural due process by providing that a fee petition must be supported by affidavits, a party opposing a fee petition must be given a reasonable opportunity to file a responsive pleading, and gives parties the opportunity of an evidentiary hearing on good cause shown. 
Kaufman
, 301 Ill.App.3d at 837.
 
The court concluded that because an evidentiary hearing is still held if it is found necessary under 501(c-1), there was no violation of  procedural due process. 
Kaufman
, 301 Ill.App.3d at 837.
 

Applying the same reasoning as employed in 
Kaufman
, we agree section 501(c-1) is facially sufficient to protect against the erroneous deprivation of property, be it non marital or marital.
 Section 501(c-1), like section 508(a), mandates that before 
any fees can be awarded, 
the party seeking fees must first demonstrate the inability to pay and the ability of the other party to meet both their obligations. 
In re
 Marriage of Minear
,
 287 Ill.App.3d 1073, 1084-85 (1997). 
Further, although an evidentiary hearing is not required under section 501(c-1), any interim award must nevertheless be supported by non-testimonial evidence, as submitted by the parties in the form of affidavits, financial disclosure statements, requests for judicial notice, etc. See FAMILY LAW § 2.88 (Illinois Institute for Continuing Legal Education, 1998, Supp.2001).
 
 Most significantly, 
however, and as emphasized by the court in 
Kaufman
, section 501(c-1) does not foreclose the opportunity of an evidentiary hearing, but still allows for a hearing where good cause is shown. 
C
onsidering the third element of the due process test, we further observe that mandating an evidentiary hearing in every post decree proceeding would undermine the State's interest: to achieve substantial parity in the parties access to funds for litigation, including the timely award of interim fees, in 
all proceedings under the Dissolution Act.  
Although a party arguably has a greater interest in non marital property than in marital property, in that the interest is not shared with another, this individual interest must be balanced against the State's public interest 
in the institution of marriage, and by extension, the State's interest in ensuring 
the fairness and integrity of all proceedings related to dissolution. 
West v. West
, 294 Ill.App.3d 356, 361
 (1998) (I
n dissolution proceedings, t
he State is a third party, representing the public interest in the institution of marriage).
 As it applies in post decree proceedings, 
we find section 501(c-1) does not violate procedural due process.

Petitioner alternately contends that even if section 501(c-1) applies in post decree proceedings, the circuit court erred in granting the interim award because the petition: (1) failed to adequately establish petitioner's ability to pay fees and (2) failed to adequately establish that the fees requested were "reasonable." While petitioner frames his argument as an attack upon the facial sufficiency of the petition's allegations, his argument is essentially evidentiary in nature. A section 501(c-1) petition is unique in that it serves both as the claim for relief and the evidence on which any relief must be based. In substance, petitioner's claim here is that there was inadequate documentary evidence attached to the petition to substantiate that petitioner was able to pay fees and the fees sought were reasonable. We review the circuit court's decision to award attorney's fees to determine if the court abused its discretion. 
In re
 Marriage of DeLarco
, 
313 Ill.App.3d 107, 111 (2000) (
The decision of whether to allow attorney's fees in dissolution actions is within the trial court's discretion).

For purposes of a section 501(c-1) petition, the party seeking fees must demonstrate the inability to pay and the ability of the other party to pay both parties fees.
 750 ILCS 501(c-1)(3) (West 1999).  Here, petitioner contends the circuit court erred in granting an interim award because the petition failed to adequately demonstrate his ability to pay Nancy's attorney's fees. 

However, a review of Nancy's financial disclosure affidavit
 indicates the balance between her income and expenses established 
she was unable to pay her own fees. In her petition and affidavit, Nancy further alleged that petitioner had the ability to pay both her and his own attorney's fees because he had access to vast sources of income from the operation of one gas station, the proceeds from the sale of second gas station, and extensive lines of credit with financial institutions based on these assets and income. Nancy and her attorney further represented in affidavits that petitioner had thwarted discovery in the past and retained control of the relevant information pertaining to these assets. Petitioner now contends, however, that in order to establish his ability to pay it was incumbent upon Nancy to attach documents to substantiate the petition's allegations, including petitioner's current pay stub, savings and other bank account statements, and petitioner's current financial income and expense affidavit. The problem with this position is obvious, as petitioner, rather than respondent, was in control of the relevant information.
 Significantly, petitioner chose not to file a counter affidavit or a financial disclosure statement, and did not deny having the ability to pay, demanding strict proof thereof.
 Although the party seeking fees has the burden of showing the ability of the other party to pay, we note that waiver of a party's claim of inability to pay attorney's fees may occur
 where a party refuses to present evidence of his own financial circumstances
. 
See 
In re Marriage of Walters
, 238 Ill.App.3d 1086 (1992).
 
Waiver aside, t
he trial judge, who was familiar with the case, was in a position to assess past hurdles in discovery and consider 
petitioner and respondent's access to information as a factor relevant to a determination
. 750 ILCS 501(c-1)(1)(G) (West 1998).
 In sum, we cannot say that it was an  abuse of discretion to grant the interim award, in view of the uncontradicted representations concerning petitioner's ability to pay.      

Petitioner also contends that the circuit court erred in granting the fee petition because  the petition failed to set forth adequate information to substantiate that the fees sought were  "reasonable." Specifically, petitioner maintains that in order to demonstrate the "reasonableness" of the fees being sought under section 501(c-1), Nancy was required to provide an itemized billing statement of the services rendered by her attorney, a copy of the retainer agreement with her attorney, and her attorney's hourly rate. We disagree.   

 
 
The preamble and text of section 501(c-1) specifically indicate that any interim award must reflect, "reasonable attorney's fees and costs."  It follows that a petition under section 501(c-1) must adequately address the element of "reasonableness" prerequisite to an interim award. Subsection (1) of section 501(c-1) indicates, however, that a petition for fees need only be supported by affidavits which delineate the relevant statutory factors. Thus, contrary to petitioner's assertion, it is clear from the express language of the statute that itemized billing statements and a copy of a retainer agreement are not necessary to establish "reasonableness." Here,
 in an attached affidavit, Nancy's attorney represented that Nancy had incurred $13,701.25 in attorney's fees in connection with the action to vacate the judgment, and would likely be incur an additional $15,000
 in fees, because substantial discovery and depositions would be necessary.
 Again, petitioner never contested the reasonableness of the fees being sought, instead taking the position the petition was legally insufficient because it lacked adequate documentary evidence.  To the extent petitioner now urges the fees were unreasonable, he waived this issue by failing to raise it in the trial court. 
In re
 Marriage of LaTour
,
 241 Ill.App.3d 500, 506 (1993). 
Even assuming the issue was not waived, the trial judge, who had presided over the case for more than a year, was in a position to assess the reasonableness of the fees, based on his own experience and knowledge of the procedural history of the case. See 
In re Marriage of Powers
, 252 Ill.App.3d 506, 508 (1993) (
In awarding attorney fees under the Dissolution Act, trial judge may rely on his or her own knowledge and experience when deciding value of services provided).
 Under the circumstances, we find no abuse of discretion in granting the petition for interim fees.

 Finally, petitioner requests this court 
to vacate the contempt order because his conduct was not contemptuous and did not hold the circuit court is disdain or subject it to scorn.  

It is well settled that exposing one's self to a finding of contempt is an appropriate method of testing the validity of a court order.  
Buckholtz v. MacNeal Hosp
., 313 Ill.App.3d 521
(2000).
 Further, where a refusal to comply with the court's order constitutes a good-faith effort to secure an interpretation of an issue without direct precedent, it is appropriate to vacate a contempt citation on appeal.  
In re Marriage of Daniels
, 240 Ill.App.3d 314, 338-39
 (1992).  

In this case, the record indicates that petitioner asked to be held in contempt, so as to allow review of a novel issue of Illinois law.  In the absence of a contempt order, the issue would not otherwise have been reviewable, as 
orders addressing interim attorney fee awards are not subject to interlocutory appeal. 
In re
 Marriage of Tetzlaff
,
 304 Ill.App.3d 1030 (1999).
  The circuit court's order also reflects the court understood that petitioner's reason for refusing to pay the fees was to obtain appellate review.  
In light of this, we direct the circuit court to vacate the order of contempt against petitioner. 

For the foregoing reasons, the circuit court's order compelling petitioner to pay interim fees is affirmed and the order of contempt is vacated.
 

Affirmed; contempt order vacated.

MCNULTY, P.J., and COHEN, J., concur.

FOOTNOTES
1: Petitioner has supplemented the record with his unsigned affidavit. However, the record is unclear as to whether this evidence was ever tendered or considered by the circuit court. Accordingly, it will not be considered on appeal. 
Palmros v. Barcelona
,  284 Ill.App.3d 642,
 645 (1996)
(A reviewing court will not consider evidence not before trial court).