# ILLINOIS OFFICIAL REPORTS

*In re Marriage of Earlywine*, 2013 IL 114779

| | |
|---|---|
| Caption in Supreme Court: | *In re* MARRIAGE OF JOHN J. EARLYWINE, Petitioner, and JESSICA A. EARLYWINE, Respondent (Thomas H. James, Contemnor-Appellant). |
| Docket No. | 114779 |
| Filed | October 3, 2013 |
| Held<br><br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | Statutory provisions for "leveling the playing field" in marriage dissolution proceedings permitted an order for the turnover of interim attorney fees despite an "advance payment retainer" agreement purporting to make funds provided by family members of the husband the property of his counsel. |
| Decision Under Review | Appeal from the Appellate Court for the Second District; heard in that court on appeal from the Circuit Court of Stephenson County, the Hon. Theresa L. Ursin, Judge, presiding. |
| Judgment | Appellate court judgment affirmed.<br>Circuit court judgment affirmed in part and vacated in part. |

| Counsel on Appeal | Thomas H. James, of Forreston, appellant *pro se*. |
|---|---|
| | No appearance for appellee. |
| | Paul L. Feinstein and Michael G. DiDomenico, of Chicago, *amici curiae*. |

| Justices | JUSTICE BURKE delivered the judgment of the court, with opinion. |
|---|---|
| | Chief Justice Kilbride and Justices Freeman, Thomas, Garman, Karmeier, and Theis concurred in the judgment and opinion. |

## OPINION

¶ 1     In the course of dissolution of marriage proceedings, respondent, Jessica A. Earlywine, filed a petition for interim attorney fees pursuant to the "leveling of the playing field" provisions in the Illinois Marriage and Dissolution of Marriage Act (Act). See 750 ILCS 5/501(c-1) (West 2010). The circuit court of Stephenson County found that neither respondent nor petitioner, John J. Earlywine, had the financial ability or resources to pay their respective attorney fees and costs. Pursuant to section 501(c-1)(3) of the Act, the court ordered petitioner's attorney, Thomas James, to turn over, or disgorge, to respondent's attorney half the fees previously paid to him. The court held James in "friendly" contempt at his request so that he could appeal the turnover order. On appeal, James argued that the fees were not subject to disgorgement because they were held in an advance payment retainer and became his property upon payment. The appellate court rejected James' argument, affirmed the turnover order, and vacated the order of contempt. 2012 IL App (2d) 110730. We now affirm the appellate court.

¶ 2                                Background

¶ 3     Petitioner filed his petition for dissolution of marriage on August 24, 2010. The parties had one son born of the marriage who was three years old at the time of filing. On November 1, 2010, respondent, through her attorney Richard Haime, filed a petition requesting interim attorney fees in the amount of $5,000. Respondent asked the court to order petitioner to pay her fees or to order disgorgement of fees previously paid to petitioner's attorney. In her affidavit accompanying the petition, respondent stated that she was unemployed and had no assets or cash to pay her attorney fees. In response, petitioner stated that he had been unemployed for some time, had no money to retain counsel, and that his parents had paid his legal bills.

¶ 4     Both parties submitted financial disclosure affidavits. Respondent stated that she had

-2-

earned $300 from employment in 2010 and owed $4,600 on a car. Petitioner stated that he was employed sporadically and had received some unemployment payments. Petitioner listed debts totaling more than $66,000. He stated further that he owed his parents $8,750 for legal fees paid to his attorney on his behalf.

¶ 5        Following a hearing, the trial court issued a memorandum opinion and order on April 26, 2011. The court found that there were substantial debts from the marriage which neither party was able to pay. The court further found that respondent's requested interim fees were reasonable due to the anticipated complexity of the case, including a custody evaluation. Pursuant to section 501(c-1)(3) of the Act, the court found that neither party had the financial ability or access to assets or income to pay their respective attorney fees, nor was petitioner able to pay any of respondent's fees. Accordingly, the court ordered James to turn over to Haime a portion of the fees paid to him by petitioner's parents, in the amount of $4,000.

¶ 6        Petitioner filed a motion to reconsider the disgorgement order, arguing that because the attorney fees were placed in an advance payment retainer, they were not subject to a disgorgement order by the trial court. Attached to the motion was a copy of the attorney-client agreement between James and petitioner, which indicates that petitioner agreed that all fees paid to James would be considered an advance payment retainer, as that term is used in *Dowling v. Chicago Options Associates, Inc.*, 226 Ill. 2d 277 (2007). The agreement sets forth the requirements of the advance payment retainer in compliance with Rule 1.15 of the Illinois Rules of Professional Conduct of 2010 (eff. Jan. 1, 2010). Relevant to this appeal, the agreement identifies the "special purpose" for the advance payment retainer as follows:

> "(1) the special purpose for the advance payment retainer and an explanation why it is advantageous to the client: In the case of family law with obligors or putative obligors, regardless of the source of obligation, the [Illinois Marriage and Dissolution of Marriage Act] can cause a court order to issue which will divide attorney retention funds which are held in an attorney's trust account because such funds are owned by the client and thus are part of the marital estate. This division or allocation is in a judge's discretion that provides the authority to allocate all of said funds should such facts portend such a result. The use of the 'advance payment retainer' avoids the problem of having to pay your counsel twice due to a fee allocation order albeit a Court may still order such a payment from the client directly. The benefit of the advanced payment retainer is that it avoids what can at times be the financial adversity with the attorney which you have hired due to a fee allocation order's mandating allocation from an attorney's trust account to the party on the other side of the lawsuit."

¶ 7        In support of the motion to reconsider, petitioner's mother, Joyce M. Earlywine, submitted an affidavit stating that she, her fiancé, petitioner's father, and petitioner's father's wife had paid all of the attorney fees to petitioner's attorney on his behalf.

¶ 8        The trial court issued a memorandum opinion and order on May 25, 2011, denying the motion to reconsider the turnover order. The court made the following findings:

> "The stated policy of 501(c-1)(3) is to achieve 'substantial parity between the parties.' That section further expressly designates 'retainers *** previously paid' as

a source for disgorgement \*\*\*. Public policy allowing divorce litigants to participate equally should override the advance payment retainer device of protecting the fees of one side. To allow John to shelter the fees paid on his behalf as an advance payment retainer defeats the purpose of the 'substantial parity' provisions of the Illinois Marriage and Dissolution of Marriage Act. Divorce court is a court of equity, in which the court has a substantial amount of discretion \*\*\*. This court does not find that the findings of *Dowling*, as cited by John, apply or were meant to apply to divorce cases."

¶ 9        James filed a motion for an entry of friendly contempt in connection with the fee disgorgement order. On June 21, 2011, the trial court granted the motion and fined James $50. James subsequently filed his notice of appeal.

¶ 10       The appellate court affirmed the trial court's turnover order and vacated the contempt order. 2012 IL App (2d) 110730. The court held that the plain language of section 501(c-1)(3) of the Act allows a trial court to order disgorgement of retainers previously paid to an attorney in the event that the court finds that both parties lack the financial ability and resources to pay reasonable attorney fees and costs. *Id.* ¶¶ 19-21. The legislature's use of the general term "retainers," in the court's opinion, encompassed an advance payment retainer. *Id.* ¶ 21. The court further held that allowing a party to avoid disgorgement through use of an advance payment retainer would defeat the purpose of the "leveling the playing field" provisions in section 501(c-1). *Id.* ¶¶ 15, 22.

¶ 11       This court allowed James' petition for leave to appeal pursuant to Illinois Supreme Court Rule 315 (eff. Feb. 26, 2010). We granted leave to matrimonial lawyers Paul L. Feinstein and Michael G. DiDomenico to file a brief *amicus curiae* in support of James. See Ill. S. Ct. R. 345 (eff. Sept. 20, 2010).

¶ 12                                        Analysis

¶ 13       At the outset, we note that no appellee's brief has been filed in this case. Nonetheless, we will address the merits of this appeal under the principles set forth in *First Capitol Mortgage Corp. v. Talandis Construction Corp.*, 63 Ill. 2d 128, 133 (1976) (in the absence of an appellee's brief, a reviewing court should address an appeal on the merits where the record is simple and the claimed errors are such that the court may easily decide the issues raised by the appellant).

¶ 14       At issue is whether the trial court had discretion to order James to turn over to Haime funds held in an advance payment retainer. James contends that because the funds in the advance payment retainer became his property upon payment and were placed in his general account, they were not subject to disgorgement under the leveling of the playing field provisions in the Act.

¶ 15       This court first recognized advance payment retainers in *Dowling*, which involved a judgment creditor who sought to satisfy a judgment by accessing funds held in an advance payment retainer by the debtor's attorney. *Dowling*, 226 Ill. 2d 277. We held that the retainer was not subject to turnover to the judgment creditor because it was the property of the debtor's attorney. *Id.* at 298. Prior to *Dowling*, only two types of retainers were explicitly

allowed in Illinois. *Id.* at 292. The first type, a "general," "true," or "classic" retainer, is paid to a lawyer to secure his or her availability during a specified time or for a specified matter. Such a retainer is earned when paid and immediately becomes the property of the lawyer, whether or not the lawyer ever performs any services. *Id.* at 286. The second type of retainer is a security retainer, which remains the property of the client until the lawyer applies it to charges for services actually rendered. Pursuant to the Illinois Rules of Professional Conduct, a security retainer must be deposited in a client trust account and kept separate from the lawyer's own funds. *Id.* (citing Ill. R. Prof. Conduct R. 1.15(a)).

¶ 16 In contrast to a general retainer or a security retainer, an advance payment retainer "consists of a present payment to the lawyer in exchange for the commitment to provide legal services in the future." *Dowling*, 226 Ill. 2d at 287. Ownership of an advance payment retainer passes to the lawyer immediately upon payment. Accordingly, the funds must be deposited in the lawyer's general account and may not be placed in a client's trust account due to the prohibition against commingling funds. *Id.*

¶ 17 Although this court recognized advance payment retainers as one of three retainers available to lawyers and clients in Illinois, we cautioned that such retainers "should be used only sparingly, when necessary to accomplish some purpose for the client that cannot be accomplished by using a security retainer." *Dowling*, 226 Ill. 2d at 293. As we explained, in most cases a security retainer is the best vehicle to protect the client's funds:

> "The guiding principle, however, should be the protection of the client's interests. In the vast majority of cases, this will dictate that funds paid to retain a lawyer will be considered a security retainer and placed in a client trust account, pursuant to Rule 1.15. Separating a client's funds from those of the lawyer protects the client's retainer from the lawyer's creditors. [Citation.] Commingling of a lawyer's funds with those of a client has often been the first step toward conversion of a client's funds. In addition, commingling of a client's and the lawyer's funds presents a risk of loss in the event of the lawyer's death. [Citation.]" *Id.* at 292-93.

¶ 18 Examples of appropriate uses of advance payment retainers include the circumstances in *Dowling*, in which a debtor hired counsel to represent him in proceedings against a judgment creditor; a criminal defendant whose property remains subject to forfeiture; and a debtor in a bankruptcy case. *Id.* at 288-89, 293. In each of these examples, a security retainer would disadvantage the client because the funds remain the client's property and are subject to the claims of the client's creditors. Thus, the client may have difficulty hiring legal counsel if the attorney fees cannot be shielded from those with legal claims to the client's property. *Id.*

¶ 19 Subsequent to our decision in *Dowling*, this court repealed the former Illinois Rules of Professional Conduct and replaced them with the Illinois Rules of Professional Conduct of 2010 (eff. Jan. 1, 2010). Subsection (c) of Rule 1.15 of the new rules sets forth the requirements for advance payment retainers consistent with those prescribed in *Dowling*. Ill. R. Prof. Conduct (2010) R. 1.15(c) (eff. Jan. 1, 2010).

¶ 20 Relying on *Dowling* and Illinois Rule of Professional Conduct 1.15, James contends that the public policy of Illinois is to recognize the freedom of a client to contract for an advance

payment retainer if it is for the client's benefit. The benefit of an advance payment retainer in this context, according to James, is to avoid exposure of the client's funds to the "obligee" spouse and her counsel. He argues that divorce and family law cases are similar to debtor-creditor cases, in that the "leveling of the playing field" rules in the Marriage Act make it difficult for a client to secure legal representation in the absence of an advance payment retainer. Thus, James contends that a party to a dissolution case ought to be able to use an advance payment retainer to shield attorney fees from being turned over to opposing counsel. For the following reasons, we disagree.

¶ 21 First, James' use of an advance payment retainer to "protect" his client's funds from turnover undermines the purpose of the leveling of the playing field rules in the Act and renders these rules a nullity. On June 1, 1997, the legislature amended the Act, substantially rewriting the rules with regard to attorney fees in marriage and custody cases. See Pub. Act 89-712 (eff. June 1, 1997); *In re Marriage of Beyer*, 324 Ill. App. 3d 305, 310 (2001). These amendments are commonly referred to as the "leveling of the playing field" rules. See *A General Explanation of the "Leveling of the Playing Field" in Divorce Litigation Amendments*, 11 CBA Rec. 32 (1997). Among other things, the amendments added a separate provision, section 501(c-1), governing "temporary" or "interim" fee awards. *Id.* "[I]nterim attorney's fees and costs" are defined by the statute as "attorney's fees and costs assessed from time to time while a case is pending, in favor of the petitioning party's current counsel, for reasonable fees and costs either already incurred or to be incurred." 750 ILCS 5/501(c-1) (West 2010).

¶ 22 The statute allows a court, after consideration of relevant factors, to order a party to pay the petitioning party's interim attorney fees "in an amount necessary to enable the petitioning party to participate adequately in the litigation." 750 ILCS 5/501(c-1)(3) (West 2010). Prior to doing so, the court must find that the petitioning party lacks sufficient access to assets or income to pay reasonable attorney fees, and that the other party has the ability to pay the fees of the petitioning party. *Id.*

¶ 23 Where, as in this case, the court finds that *both* parties lack the financial ability or access to assets or income to pay reasonable attorney fees and costs, the court may order disgorgement of fees already paid to an attorney. Specifically, "the court (or hearing officer) shall enter an order that allocates available funds for each party's counsel, *including retainers* or interim payments, or both, previously paid, in a manner that achieves substantial parity between the parties." (Emphasis added.) *Id.* The order terminates at the time the final judgment is entered. 750 ILCS 5/501(d)(3) (West 2010).

¶ 24 Whether funds held in an advance payment retainer are subject to disgorgement as part of an interim fee award is an issue of law, which is subject to *de novo* review. See *In re Marriage of Nash*, 2012 IL App (1st) 113724, ¶ 15 (quoting *In re Marriage of Beyer*, 324 Ill. App. 3d 305, 309 (2001)). Our primary goal in construing a statute is to give effect to the intention of the legislature. *People v. Collins*, 214 Ill. 2d 206, 214 (2005). To ascertain that intent, " 'we may properly consider not only the language of the statute, but also the purpose and necessity for the law, and evils sought to be remedied, and goals to be achieved.' " *Id.* (quoting *People ex rel. Sherman v. Cryns*, 203 Ill. 2d 264, 280 (2003)). The statutory language is the best indicator of the legislative intent. *Id.*

¶ 25    In enacting section 501(c-1), the legislature did not specify what types of "retainers" previously paid to an attorney are subject to disgorgement. However, the policy underlying the interim fee provisions was clearly spelled out by the legislature. As part of the "leveling of the playing field" amendments, the following italicized language was added to the underlying purposes of the Act:

> "This Act shall be liberally construed and applied to promote its underlying purposes, which are to:
>
> * * *
>
> (5) make reasonable provision for spouses and minor children during and after litigation, *including provision for timely awards of interim fees to achieve substantial parity in parties' access to funds for litigation costs*[.]" (Emphasis added.) 750 ILCS 5/102(5) (West 2010).

¶ 26    Other courts and commentators have expanded on the purposes and goals of the interim fee provisions in the Act. "In enacting section 501(c-1), the legislature's goal was to level the playing field by equalizing the parties' litigation resources where it is shown that one party can pay and the other cannot." *In re Marriage of Beyer*, 324 Ill. App. 3d 305, 315 (2001) (citing *In re Marriage of DeLarco*, 313 Ill. App. 3d 107, 113 (2000)). "[The] new interim fee system was an attempt to address the problem of the 'economically disadvantaged spouse,' where one spouse uses his or her greater control of assets or income as a litigation tool, making it difficult for the disadvantaged spouse to participate adequately in the litigation." *In re Minor Child Stella*, 353 Ill. App. 3d 415, 419 (2004) (citing *A General Explanation of the "Leveling of the Playing Field" in Divorce Litigation Amendments*, 11 CBA Rec. 32 (1997)). Prior to the amendments, "[divorce] cases frequently entailed strenuous efforts to 'block' access by the other side to funds for litigation." *Id.* All too frequently, the "economically advantaged spouse" would apply his or her greater access to income or assets as a tool, making it difficult for the disadvantaged spouse to retain counsel or otherwise participate in litigation. *Id.* Thus, the new interim fee system was designed to ameliorate this problem by streamlining the process for obtaining interim attorney fees. *Id.*

¶ 27    It is clear from the attorney-client agreement that the advance payment retainer in this case was set up specifically to circumvent the "leveling of the playing field" rules set forth in the Act. To allow attorney fees to be shielded in this manner would directly undermine the policies set forth above and would strip the statute of its power. If we were to accept James' argument, an economically advantaged spouse could obtain an unfair advantage in any dissolution case simply by stockpiling funds in an advance payment retainer held by his or her attorney.

¶ 28    Furthermore, the reasons expressed in *Dowling* for allowing advance payment retainers are not pertinent to a dissolution case in which one or both parties lacks the financial ability or access to funds to pay their attorneys. In *Dowling*, we held that advance payment retainers should be used "sparingly" and only when necessary to accomplish a special purpose for the client which could not be accomplished with a security retainer. *Dowling*, 226 Ill. 2d at 293. In bankruptcy and forfeiture cases, for example, a client may have difficulty hiring legal counsel if the funds for attorney fees are subject to the claims of the client's creditors. See

*Dowling*, 226 Ill. 2d at 293.

¶ 29       In divorce cases, however, there are *two* clients, both of whom require access to legal counsel. Shielding assets so that one spouse may easily hire an attorney has the direct effect of making it difficult for the other spouse to hire his or her own attorney. This would defeat the purpose and goals of the Act, which is to enable parties to have equitable access to representation. See Alison G. Turoff, *Recovering Attorney Fees From the Opposing Party in Illinois Divorce Cases*, 92 Ill. B.J. 462, 463 (2004) (the interim fee provision "supplies a valuable tool for the attorney contemplating representing a client who individually would have difficulty paying the fees for a divorce but whose marital estate or spouse could afford such fees"). Accordingly, we hold that advance payment retainers in dissolution cases are subject to disgorgement pursuant to section 501(c-1)(3) of the Act. To hold otherwise would defeat the express purpose of the Act and render the "leveling of the playing field" provisions powerless.

¶ 30       To the extent that James argues that the funds in his advance payment retainer were obtained from John's parents and are not marital property, we note that the statute does not distinguish between marital property and nonmarital property for the purpose of disgorgement of attorney fees. The statute contemplates that retainers paid "on behalf of" a spouse may be disgorged. See 750 ILCS 5/501(c-1)(1) (West 2010) (a responsive pleading by the nonpetitioning party must set out the amount of "each retainer or other payment or payments, or both, previously paid to the responding party's counsel by *or on behalf of* the responding party" (emphasis added)). Furthermore, the statute's repeated references to the parties' "access" to funds for litigation implies that funds may come from any source. See 750 ILCS 5/102(5), 501(c-1)(1)(A), (3) (West 2010).

¶ 31       We note, too, that one factor to be considered by the trial court in making an interim award is the "alleged *non-marital* property within access to a party." (Emphasis added.) 750 ILCS 5/501(c-1)(1)(A) (West 2010).[1] Thus, we find it irrelevant for purposes of interim fee awards whether the funds for attorney fees derived from marital or nonmarital property.[2]

---

[1]See also *Beyer*, 324 Ill. App. 3d at 319 (interim fees pursuant to section 501(c-1) apply to marital and nonmarital property); David H. Hopkins,*"Leveling the Playing Field" in Divorce: Questions and Answers About the New Law*, 85 Ill. B.J. 410, 413 (1997) ("Questions about disgorgement can also arise if a third party—a parent, for example—is funding the divorce litigation for one of the parties. Consistent with the basic principles of these reforms, attorney's fees paid by parents for one spouse might sometimes be ordered disgorged in favor of the other spouse's counsel at an interim fee award hearing. When that possibility exists, it should be considered at the outset, and perhaps the initial retainer should be higher than usual to account for this risk.").

[2]It is important to note that interim fees are, by definition, temporary. As such, they may be accounted for, as debts or otherwise, upon the final division of the marital estate. See 750 ILCS 5/501(c-1)(2) (West 2010) ("[a]ny assessment of an interim award *** shall be without prejudice to any final allocation and without prejudice as to any claim or right of either party or any counsel of record at the time of the award"); 750 ILCS 5/508 (West 2010); *In re Marriage of Johnson*, 351 Ill. App. 3d 88, 97 (2004) ("By definition, a disgorgement order is never a final adjudication of the attorney's right to fees—it merely controls the timing of payment, with no effect on whether, or how

¶ 32    Alternatively, James argues that section 501(c-1)'s provision for disgorgement of attorney fees irreconcilably conflicts with Rule 1.15 of the Illinois Rules of Professional Conduct. He argues that this alleged conflict must be resolved in favor of the supreme court rule, pursuant to the separation of powers doctrine established in article II, section 1, of the Illinois Constitution of 1970. We are unpersuaded by this argument. Article II, section 1, provides: "The legislative, executive and judicial branches are separate. No branch shall exercise powers properly belonging to another." Ill. Const. 1970, art. II, § 1. "[T]his court possesses rulemaking authority to regulate the trial of cases." *Strukoff v. Strukoff*, 76 Ill. 2d 53, 58 (1979). Where a statute conflicts with a supreme court rule, it infringes upon the power of the judiciary, and the rule must prevail. *McAlister v. Schick*, 147 Ill. 2d 84, 94 (1992); *People v. Joseph*, 113 Ill. 2d 36, 45 (1986). However, "[t]his court has repeatedly recognized that the legislature may impose reasonable limitations and conditions upon access to the courts." *McAlister*, 147 Ill. 2d at 95. The legislature has broad powers to regulate attorney fees and the attorney-client relationship, so long as a statute does not purport to limit the scope of a court's authority over those matters. *Bernier v. Burris*, 113 Ill. 2d 219, 250 (1986).

¶ 33    Upon examination of both Rule 1.15 and section 501(c-1) of the Act, we find no conflict between the rule and the statute. Rule 1.15, which incorporates the *Dowling* decision, sets forth the requirements for advance payment retainers. The rule provides that the attorney-client agreement must state a special purpose and explain why this type of retainer is advantageous to the client. Ill. R. Prof. Conduct (2010) R. 1.15(c) (eff. Jan. 1, 2010). Section 501(c-1), on the other hand, provides for awards of interim attorney fees and costs in proceedings arising under the Illinois Marriage and Dissolution of Marriage Act and sets forth the procedures to be followed by the parties and the court. The statute does not infringe upon the court's authority to regulate court matters. Rather, it leaves to the discretion of the court whether, and in what amount, interim attorney fees may be awarded. We see no direct conflict between the statute and the rule and, thus, no violation of the separation of powers clause in the Illinois Constitution.

¶ 34    Finally, James argues that the disgorgement order violates the first amendment, in that it infringes upon a client's access to the courts and the right to retain counsel. However, we find that James lacks standing to make this argument because he is not the person whose rights are allegedly being infringed. See *Members of the City Council v. Taxpayers for Vincent*, 466 U.S. 789, 798 (1984) ("constitutional adjudication requires a review of the application of a statute to the conduct of the party before the Court"); *People ex rel. Shockley v. Hoyle*, 338 Ill. App. 3d 1046, 1055 (2003) (a party lacks standing to assert the alleged deprivation of another individual's constitutional rights).

---

much, the attorney is entitled to collect at the conclusion of his services."); *Attorney Fees in Domestic Relations Cases: The 2009 Amendments to "Leveling of the Playing Field,"* 98 Ill. B.J. 136, 137 (2010) ("Less judicial caution was appropriate for granting interim fees in pre-decree divorce cases because the trial court could adjust (or 'true up') the ultimate division of the marital estate at the end of the case to account for attorney fee payments by each party.").

¶ 35                                    Conclusion

¶ 36        For the foregoing reasons, we affirm the judgment of the appellate court affirming the circuit court's turnover order. We also affirm the vacation of the contempt order. See *In re Marriage of Beyer*, 324 Ill. App. 3d 305, 321-22 (2001) (where a refusal to comply with a court's order constitutes a good-faith effort to secure an interpretation of an issue without direct precedent, it is appropriate to vacate a contempt order on appeal).


¶ 37        Appellate court judgment affirmed.

¶ 38        Circuit court judgment affirmed in part and vacated in part.