2015 IL App (2d) 150271
No. 2-15-0271
Opinion filed December 16, 2015

_____

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT
_____

| | | |
|---|---|---|
| *In re* MARRIAGE OF MICHAEL SQUIRE, | ) | Appeal from the Circuit Court |
| | ) | of Du Page County. |
| Petitioner-Appellee, | ) | |
| | ) | |
| and | ) | No. 13-D-1805 |
| | ) | |
| CATHERINE D. SQUIRE, | ) | |
| | ) | |
| Respondent | ) | Honorable |
| | ) | Neal W. Cerne, |
| (The Stogsdill Law Firm, P.C., Appellant). | ) | Judge, Presiding. |

_____

JUSTICE BURKE delivered the judgment of the court, with opinion.
Justices Hutchinson and Zenoff concurred in the judgment and opinion.

**OPINION**

¶ 1    In this marriage-dissolution action, The Stogsdill Law Firm (Stogsdill), which represents respondent Catherine D. Squire, appeals the trial court's order requiring it to pay $60,000 to the attorneys for petitioner Michael Squire pursuant to the "leveling of the playing field" provisions of the Illinois Marriage and Dissolution of Marriage Act (Act) (750 ILCS 5/501(c-1) (West 2014)). Stogsdill contends that (1) this provision does not apply to an earned retainer, (2) the trial court's order finding that the payment was necessary to level the playing field is against the manifest weight of the evidence, and (3) we should vacate the contempt finding. We vacate the contempt finding but otherwise affirm.

¶ 2     The parties were married in 1993 and had three children together, two of whom are still minors.  Petitioner sought to dissolve the marriage in 2013.  On June 2, 2014, he filed a petition for interim and prospective attorney fees pursuant to sections 501(c-1) and 508 of the Act.  750 ILCS 5/501(c-1), 508 (West 2014).  Petitioner alleged that he lacked funds to pay his attorneys whereas respondent had access to significant funds to pay her lawyers.  The petition requested that respondent contribute to petitioner's attorney fees in order to "level the playing field."

¶ 3     The following facts are largely undisputed.  The parties had few assets but significant debts.  Although petitioner earned a six-figure income, his monthly expenses, which included debt-service payments from the parties' bankruptcy, exceeded his monthly income.  He had paid his attorneys $2,500 and had no additional funds with which to pay them.  By the time of the hearing on the contribution petition, he owed his attorneys approximately $53,000.

¶ 4     Respondent was unemployed.  However, she had borrowed approximately $130,000 from her mother to pay her attorneys.  Approximately $10,000 of that amount went to her previous attorney.  The rest was paid to Stogsdill as a retainer.

¶ 5     In response to the petition, Stogsdill argued strenuously that it had already earned the retainer and deposited the money in its general account.  Thus, it contended, it could not be required to disgorge fees that were already its property.

¶ 6     The court granted the interim-fee petition.  It found that the parties had not been overly litigious, but that they were not "financially secure."  Thus, although petitioner earned a "reasonable salary," his net income was insufficient to meet his obligations and basic living expenses.  On the other hand, respondent could borrow money from her mother to pay her attorneys.  Citing *In re Marriage of Earlywine*, 2013 IL 114779, the court held that it did not

matter that the fees already belonged to Stogsdill, or came from a source other than the marital estate. The court ordered Stogsdill to pay petitioner's counsel $60,000 within 14 days.

¶ 7 The trial court subsequently denied respondent's motions to reconsider and to reopen the proofs and held Stogsdill in "friendly contempt." It ordered Stogsdill to pay the $60,000 by March 19, 2015, and to pay a $100 daily fine for each day thereafter that Stogsdill failed to pay. Stogsdill filed a notice of appeal the same day.

¶ 8 Thereafter, the court conducted a trial on the underlying dissolution petition. On May 29, 2015, the court issued an order dissolving the parties' marriage and resolving most of the ancillary issues. The order expressly incorporated the interim attorney-fee order and the order holding Stogsdill in contempt, but reserved the issue of a final apportionment of attorney fees pending this appeal.

¶ 9 On appeal, Stogsdill renews its contention that it cannot be required to disgorge fees that it has already earned. It contends that the statute refers to "available" funds and that fees that it has earned and deposited into its general account are not "available." It further contends that *Earlywine* involved a different type of retainer from that at issue here.

¶ 10 Petitioner filed a motion to dismiss the appeal for lack of jurisdiction or, alternatively, to find it moot. Petitioner argued that, since Stogsdill filed its notice of appeal, the trial court had entered a final judgment of dissolution that expressly incorporated the contempt order and the interim fee order. No one had appealed from that judgment. Petitioner thus argued that both the contempt order and the interim fee order were superseded by the final judgment such that those orders ceased to exist and, because Stogsdill has not appealed the final judgment, there is no order from which it can appeal. We denied the motion.

¶ 11    In his appellee's brief, petitioner reasserts that either we lack jurisdiction or the appeal is moot. With the benefit of full briefing and additional factual context, we adhere to our previous ruling.

¶ 12    We first find that we have jurisdiction. Stogsdill appealed from an order finding it in contempt of court and imposing a sanction. Such an order is final and appealable. Ill. S. Ct. R. 304(b)(5) (eff. Feb. 26, 2010); *In re Marriage of Knoerr*, 377 Ill. App. 3d 1042, 1044-45 (2007) (citing *Kazubowski v. Kazubowski*, 45 Ill. 2d 405, 414-15 (1970)). However, the trial court retained jurisdiction to enforce the order. *In re Marriage of Allen*, 343 Ill. App. 3d 410, 412 (2003) ("Although the trial court loses jurisdiction to amend a judgment after 30 days from entry, it retains indefinite jurisdiction to enforce the judgment."). Thus, the trial court's incorporating the contempt order in the dissolution judgment was appropriate under its enforcement power, but it did not nullify the original contempt order or eliminate Stogsdill's right to appeal.

¶ 13    Further, we adhere to our position that the appeal is not moot. An issue is moot where "intervening events preclude a reviewing court from granting effective relief." *Holly v. Montes*, 231 Ill. 2d 153, 157 (2008). Petitioner asserts that, after Stogsdill filed its notice of appeal, the trial court entered a final judgment dissolving the parties' marriage and incorporating the interim fee order, and no one has appealed from that judgment. Petitioner reasons that we cannot provide Stogsdill effective relief, because, even if we vacated the interim fee order, Stogsdill would have to pay over the same amount pursuant to the final judgment, from which he did not appeal. We disagree.

¶ 14    Contrary to petitioner's representation, the trial court did not enter a final dissolution judgment. Rather than carrying forward the interim order as the final order on the issue of contribution to attorney fees, the dissolution order expressly *reserves* the issue of a final

apportionment of attorney fees pending the outcome of this appeal. See *In re Marriage of Derning*, 117 Ill. App. 3d 620, 628 (1983) (order in dissolution action reserving attorney-fee issues was not final and appealable) (citing *In re Marriage of Leopando*, 96 Ill. 2d 114 (1983)). Far from finally deciding the issue and precluding an appeal as petitioner seems to suggest, the court's order reserves the issue to await our decision. Thus, reversing the interim fee order would provide Stogsdill with relief.

¶ 15    Turning to the merits, we conclude that the trial court did not err in ordering Stogsdill to disgorge a portion of its retainer. Stogsdill contends that the trial court could not require it to disgorge fees that it had already earned, *i.e.*, billed against. Resolution of this issue requires us to interpret section 501(c-1)(3) of the Act. 750 ILCS 5/501(c-1)(3) (West 2014). That section provides in relevant part:

> "In any proceeding under this subsection (c-1), the court (or hearing officer) shall assess an interim award against an opposing party in an amount necessary to enable the petitioning party to participate adequately in the litigation, upon findings that the party from whom attorney's fees and costs are sought has the financial ability to pay reasonable amounts and that the party seeking attorney's fees and costs lacks sufficient access to assets or income to pay reasonable amounts. *** If the court finds that both parties lack financial ability or access to assets or income for reasonable attorney's fees and costs, the court (or hearing officer) shall enter an order that allocates available funds for each party's counsel, including retainers or interim payments, or both, previously paid, in a manner that achieves substantial parity between the parties." *Id.*

¶ 16    Our primary goal in construing a statute is to give effect to the intent of the legislature. *People v. Collins*, 214 Ill. 2d 206, 214 (2005). To ascertain that intent, " 'we may properly

consider not only the language of the statute, but also the purpose and necessity for the law, and evils sought to be remedied, and goals to be achieved.' " *Id*. (quoting *People ex rel. Sherman v. Cryns*, 203 Ill. 2d 264, 280 (2003)). However, the statutory language remains the best indicator of the legislature's intent. *Earlywine*, 2013 IL 114779, ¶ 24.

¶ 17    In *Earlywine*, the court considered whether an advance-payment retainer was subject to disgorgement pursuant to the leveling-of-the-playing-field provisions. The court noted that, in contrast to a general retainer or a security retainer, an advance-payment retainer is a present payment to a lawyer in exchange for his or her commitment to provide legal services in the future. *Id.* ¶ 16 (quoting *Dowling v. Chicago Options Associates, Inc.*, 226 Ill. 2d 277, 287 (2007)). Ownership of an advance-payment retainer passes to the lawyer immediately upon payment and, accordingly, the funds must be deposited into the lawyer's general account rather than the client's trust account, due to the prohibition against commingling funds. *Id.*

¶ 18    The court held that an advance-payment retainer was subject to disgorgement. *Id.* ¶ 29. Further, it did not matter that the funds in question came from the husband's parents rather than the marital estate. *Id.* ¶ 31.

¶ 19    Stogsdill argues that *Earlywine* does not control here, because the retainer at issue was not an advance-payment retainer. Stogsdill suggests that an advance-payment retainer, although approved by the supreme court, is essentially an accounting device to shield the funds from the client's creditors, whereas here Stogsdill had earned its retainer by performing legal services.

¶ 20    Petitioner responds that section 501(c-1)(3) does not limit the types of retainers to which it applies. The statute's plain language says that "retainers or interim payments" may be used for the purpose of leveling the playing field. 750 ILCS 5/501(c-1)(3) (West 2014). *Earlywine* held

that a broad construction of this provision was necessary to effectuate its purpose. The court observed:

> "In enacting section 501(c-1), the legislature did not specify what types of 'retainers' previously paid to an attorney are subject to disgorgement. However, the policy underlying the interim fee provisions was clearly spelled out by the legislature. As part of the 'leveling of the playing field' amendments, the following italicized language was added to the underlying purposes of the Act:
>
> 'This Act shall be liberally construed and applied to promote its underlying purposes, which are to:
>
> * * *
>
> (5) make reasonable provision for spouses and minor children during and after litigation, *including provision for timely awards of interim fees to achieve substantial parity in parties' access to funds for litigation costs*[.]' " (Emphasis in original.) *Earlywine*, 2013 IL 114779, ¶ 25 (quoting 750 ILCS 5/102(5) (West 2010)).

¶ 21 Contrary to Stogsdill's argument, *Earlywine* did not intend to limit its holding to advance-payment retainers. Moreover, accepting Stogsdill's position would completely frustrate the purpose of the statute. The "advantaged spouse" and his or her attorney could effectively block access to funds for the other spouse by the way they categorized their retainer agreement. Moreover, the attorney representing the advantaged spouse would have a strong incentive to earn the fees at an early stage of the litigation. The attorney could file voluminous pleadings and motions early in the case, thus "earning" the retainer, while leaving the other spouse to respond to a mountain of paperwork with little chance of obtaining resources to do so properly.

¶ 22    Stogsdill focuses on the word "available" in section 501(c-1)(3) and argues that the funds here were not "available" because Stogsdill had already earned the retainer and deposited the funds into its general account. However, *Earlywine* refutes this argument. The court noted that the retainer in question became the law firm's property immediately upon payment and was deposited into the firm's general account, but held that the funds were nevertheless subject to disgorgement. From this, it is clear that "available" as used in the statute simply means that the funds exist somewhere.

¶ 23    Stogsdill alternatively argues that the trial court's order is against the manifest weight of the evidence. Stogsdill focuses on the unusual circumstances that the husband, who earned a six-figure income, was considered the disadvantaged spouse while the wife, who was unemployed, was considered the advantaged spouse. This was so because the husband's monthly outlays exceeded his income while the wife was able to borrow large amounts from her mother. These findings seem to be based on essentially undisputed evidence. In any event, Stogsdill points to no evidence to call them into question. Moreover, the statute, by directing the court to consider whether "the party from whom attorney's fees and costs are sought has the financial ability to pay reasonable amounts and that the party seeking attorney's fees and costs lacks sufficient access to assets or income to pay reasonable amounts" (750 ILCS 5/501(c-1)(3) (West 2014)), seems to mandate such a practical approach rather than a mere comparison of gross incomes as Stogsdill seems to suggest. Finally, it does not matter that the source of the funds is a relative rather than the marital estate. *Earlywine*, 2013 IL 114779, ¶ 30. Thus, the trial court's order is supported by the evidence.

¶ 24    Stogsdill requests that we vacate the contempt finding. Stogsdill argues that it sought the contempt finding only as a means to appeal the underlying fee order, that it never willfully

disregarded the court's authority, and thus that it is appropriate to vacate the contempt finding. We agree.

¶ 25     In *Earlywine*, the court affirmed the appellate court's vacation of the contempt order where it was clear that the contempt was merely a good-faith effort to secure a definitive interpretation of the issue. *Id.* ¶ 36 (citing *In re Marriage of Beyer*, 324 Ill. App. 3d 305, 321-22 (2001)). Thus, we vacate the contempt finding.

¶ 26     We thus affirm the order requiring Stogsdill to pay petitioner's counsel $60,000, but vacate the order finding Stogsdill in contempt, and remand the cause.

¶ 27     Affirmed in part and vacated in part; cause remanded.