# Illinois Official Reports

## Appellate Court

---

**Harris v. One Hope United, Inc., 2013 IL App (1st) 131152**

---

| | |
|---|---|
| Appellate Court Caption | ROBERT F. HARRIS, Public Guardian of Cook County, as Independent Administrator of the Estate of Marshana Philpot, Deceased, Plaintiff-Appellee, v. ONE HOPE UNITED, INC., LASHANA PHILPOT, and PIXIE DAVIS, Individually and as Agent of One Hope United, Inc., Defendants (Stellato and Schwartz, Ltd., Contemnor-Appellant). |
| District & No. | First District, First Division<br>Docket No. 1-13-1152 |
| Filed | December 16, 2013 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | In "friendly contempt" proceedings arising from an action alleging that defendant agency failed to protect a child it was serving under a contract with the Department of Children and Family Services as part of a program to keep troubled families together, the appellate court upheld the trial court's order requiring defendant to produce a "Priority Review" report prepared concerning the child's case, notwithstanding defendant's contention that the report was protected from disclosure under the self-critical analysis privilege, since that privilege is not recognized by Illinois state courts; however, the contempt order was vacated. |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 11-L-1160; the Hon. Eileen Brewer, Judge, presiding. |
| Judgment | Affirmed in part and vacated in part. |

| Counsel on Appeal | Stellato & Schwartz, Ltd., of Chicago (Esther Joy Schwartz and Richard W. Schumacher, of counsel), for appellant. |
|---|---|
| | Law Office of Daniel E. Goodman, LLC, of Rosemont (Gary W. Klages, of counsel), for appellee. |
| Panel | JUSTICE DELORT delivered the judgment of the court, with opinion. Presiding Justice Connors and Justice Hoffman concurred in the judgment and opinion. |

## OPINION

¶ 1 The self-critical analysis privilege protects certain documents from disclosure in litigation. Some federal courts have recognized the privilege, but Illinois state courts have not. In the court below, the defendant relied on the privilege to justify its refusal to turn over certain documents to the plaintiff. The defendant was held in "friendly contempt" to facilitate an interlocutory appeal regarding its use of the privilege. Heeding our supreme court's admonition that recognizing common law privileges is a matter best left to the legislature, we decline to recognize the privilege ourselves and therefore generally affirm the judgment below.

¶ 2 BACKGROUND

¶ 3 One Hope United (One Hope) contracts with the Illinois Department of Children and Family Services (DCFS) to provide services related to keeping troubled families together. Seven-month-old Marshana Philpot died while her family participated in One Hope's "Intact Family Services" program. The Cook County public guardian (Public Guardian), acting as administrator of Marshana's estate, filed this wrongful death case to recover damages against One Hope, its employee Pixie Davis, and Marshana's mother, Lashana Philpot.

¶ 4 The complaint alleges, *inter alia*, that DCFS received a complaint in December 2009 about Lashana's neglect and/or abuse of Marshana. DCFS investigated the complaint and assigned the matter to One Hope. Beginning in February 2010, One Hope began monitoring the Philpot family for counseling services. In April 2010, Marshana was hospitalized for failure to thrive. When she was discharged, DCFS ordered that she live with her aunt, Marlene Parsons. Under Ms. Parsons's care, the child began to thrive. Eventually, though, the child was returned to the care of her mother. According to the complaint, the child drowned in July 2010 when Lashana left her unattended while bathing her. The complaint further alleges that One Hope failed to protect Marshana from abuse or neglect, and should not have allowed Marshana to be returned to her mother because of her unfavorable history and her failure to complete parenting classes.

- 2 -

¶ 5        During the course of this litigation, attorneys for the Public Guardian deposed the executive director of One Hope, who revealed the existence of a "Priority Review" report regarding Marshana's case. According to the director, One Hope has a "continuous quality review department" which investigates cases and prepares these reports. The priority review process considers whether One Hope's services were professionally sound, identifies "gaps in service delivery" and evaluates "whether certain outcomes have been successful or unsuccessful." After One Hope refused to produce the report in response to a discovery request, the Public Guardian moved to compel its production. One Hope resisted, asserting that the report was protected from disclosure by the self-critical analysis privilege.

¶ 6        The trial court found that the privilege did not apply and ordered One Hope to produce the priority review report. The court found that One Hope's assertion of the privilege was "respectful" and "in good faith," but its refusal to produce the report after being ordered to do so was nonetheless contumacious. To facilitate One Hope's request for appellate review of the privilege issue, the court found One Hope's law firm[1] in "friendly" contempt of court and fined it $1 per day. See *Dufour v. Mobil Oil Corp.*, 301 Ill. App. 3d 156, 162 (1998) ("The proper procedure to test on appeal a circuit court's discovery order is for the contemnor to request the trial court to enter a citation of contempt."). The fine order was immediately appealable under Supreme Court Rule 304(b)(5) (Ill. S. Ct. R. 304(b)(5) (eff. Feb. 26, 2010)), and when a contempt order based on a discovery violation is appealed, the underlying discovery order is also subject to review (*Reda v. Advocate Health Care*, 199 Ill. 2d 47, 54 (2002)).

¶ 7                                      ANALYSIS

¶ 8        We generally review discovery orders for abuse of discretion. *Sander v. Dow Chemical Co.*, 166 Ill. 2d 48, 66-67 (1995). However, whether a privilege completely insulates particular material from disclosure presents a question of law, which we review *de novo*. *Center Partners, Ltd. v. Growth Head GP, LLC*, 2012 IL 113107, ¶ 27. The parties do not dispute that the self-critical analysis privilege has never been definitively established by any Illinois statute, court rule, or prior state case law.

¶ 9        The self-critical analysis privilege had its genesis in a medical malpractice case, *Bredice v. Doctors Hospital, Inc.*, 50 F.R.D. 249 (D.D.C. 1970). The *Bredice* court disallowed discovery of information regarding hospital staff meetings periodically convened to review patient care, because the meetings were not "part of current patient care but are in the nature of a retrospective review of the effectiveness of certain medical procedures," and because the value of those meetings "would be destroyed if the meetings and the names of those participating were to be opened to the discovery process." *Id.* at 250. The facts of *Bredice* have a certain resonance to those presented here, but a review of applicable Illinois law on the topic leads us a contrary result.

¶ 10       One local federal court has explained that to assert the self-critical analysis privilege, a party must show that "(1) the information sought resulted from a self-critical analysis

---

[1]One Hope's law firm is technically the only appellant in this case. However, for ease of reading, we refer herein to "One Hope's" arguments rather than the "law firm's" arguments.

undertaken by the party seeking protection, (2) the public has a strong interest in preserving the free flow of the information sought, (3) the information is of the type whose flow would be curtailed if discovery were allowed, and (4) the document was prepared with the expectation that it would be kept confidential and has in fact been kept confidential." *Ludwig v. Pilkington North America, Inc.*, No. 03 C 1086, 2004 WL 1898238, at *2 (N.D. Ill. Aug. 13, 2004).

¶ 11    The *Ludwig* court further explained that the privilege "is intended to encourage companies to engage in candid and often times critical internal investigations of their own possible wrong doings." *Id.* at *1. However, the court cautioned that because of the pressing need to obtain the truth through the discovery process, "courts have been somewhat hesitant to embrace the self-critical analysis privilege and have often qualified their uses of the privilege with phrases like 'assuming that the self-critical analysis privilege exists' or have noted that other courts have questioned the existence of such a privilege altogether." *Id.* As is clear from *Bredice*, *Ludwig*, and similar cases, the self-critical analysis privilege on the federal level is created only by case law and not by federal statutes or specific court rules.

¶ 12    To determine whether the self-critical analysis privilege exists in Illinois, we first look to the three main sources from which legal privileges emanate. Our supreme court's codified rules of evidence became effective on January 1, 2011. Ill. S. Ct., M.R. 24138 (eff. Jan. 1, 2011). The rules provide that, except for those privileges created by statute,[2] evidentiary privileges "shall be governed by the principles of the common law as they may be interpreted by Illinois courts in the light of reason and experience." Ill. R. Evid. 501 (eff. Jan. 1, 2011). The rules of evidence contain no exception for self-critical analytical evidence. Common law privileges established by Illinois courts of review include the secret surveillance location privilege. See *People v. Criss*, 294 Ill. App. 3d 276, 281 (1998). The third source is other court rules: for example, the attorney-client privilege is established not by the rules of evidence, but by the Rules of Professional Conduct (Ill. R. Prof. Conduct (2010) R. 1.6 (eff. Jan. 1, 2010)) and supreme court rules such as Supreme Court Rule 201(b)(2) (Ill. S. Ct. R. 201(b)(2) (eff. Jan. 1, 2013)).

¶ 13    Illinois law recognizes that the central purpose of the discovery process is to reveal the truth to the finder of fact. See, *e.g.*, *Buehler v. Whalen*, 70 Ill. 2d 51, 67 (1977) ("truth is the heart of all discovery"); *Payne v. Coates-Miller, Inc.*, 68 Ill. App. 3d 601, 606 (1979) ("The underlying philosophy which gave impetus to the expansion and liberalization of our discovery rules was the desire of the courts to replace the traditional 'combat' theory of litigation with the more equitable principle that litigation should be a joint search for the truth."). Privileges against disclosure "are strongly disfavored because they operate to 'exclude relevant evidence and thus work against the truthseeking function of legal proceedings.' "

---

[2]Most of the commonly used privileges are statutorily created. Examples include the marital privilege (725 ILCS 5/115-16 (West 2012); 735 ILCS 5/8-801 (West 2012)); physician-patient privilege (735 ILCS 5/8-802 (West 2012)); informant's privilege (735 ILCS 5/8-802.3 (West 2012); see also Ill. S. Ct. R. 412(j)(ii) (eff. Mar. 1, 2001)); clergy privilege (735 ILCS 5/8-803 (West 2012)); reporter's privilege (735 ILCS 5/8-901 (West 2012)); voter's privilege (735 ILCS 5/8-910 (West 2012)); and therapist-patient privilege (740 ILCS 110/10 (West 2012)).

*People ex rel. Birkett v. City of Chicago*, 184 Ill. 2d 521, 527 (1998) (quoting *People v. Sanders*, 99 Ill. 2d 262, 270 (1983)). In *Birkett*, our supreme court admonished lower courts that evidentiary privileges should not be applied unless they "promote[ ] sufficiently important interests to outweigh the need for probative evidence" (internal quotation marks omitted) and that "the extension of an existing privilege or establishment of a new one *is a matter best deferred to the legislature.*" (Emphasis added.) *Id.* at 528.

¶ 14    Case law in Illinois regarding the self-critical analysis privilege is sparse, but consistent. The Second District of this court has twice declined to recognize the privilege, albeit in somewhat different contexts. In *Rockford Benevolent & Protective Ass'n v. Morrissey*, 398 Ill. App. 3d 145 (2010), the court considered whether self-critical documents normally available under the Freedom of Information Act (5 ILCS 140/1 *et seq.* (West 2006)) (FOIA) could be subject to the privilege. The court declined to recognize the privilege as an exception to the FOIA, stating: "we cannot accept defendants' argument and authority for creating a self-critical analysis privilege in this matter." *Rockford*, 398 Ill. App. 3d at 153.

¶ 15    Similarly, in *People v. Campobello*, 348 Ill. App. 3d 619 (2004), a religious diocese refused to produce subpoenaed personnel records regarding abuse which its priests allegedly committed against minors. The diocese argued that the self-critical analysis privilege shielded the records from disclosure, but the court disagreed and ordered the diocese to produce the records, stating that the privilege has "never been recognized in Illinois common law," that applying it would be an "exercise in 'judicial legislation,' " and that establishing it was a task for the legislature, not the courts. *Id.* at 636-37.

¶ 16    One Hope argues that we should decline to follow these Second District cases and find the privilege has evolved from the "intersect[ion]" of Illinois statutory law, public policy, discovery rules and evidence. For instance, it suggests that shielding self-critical documents would further the purposes of the Child Death Review Team Act (20 ILCS 515/1 *et seq.* (West 2012)) (the Act). However, a close review of the Act reveals that it encourages, rather than discourages, disclosure of information of the sort sought here. The Act establishes a state policy that when a child dies, there should be "an accurate and complete determination of the cause of death *** and *** measures to prevent future deaths from similar causes." 20 ILCS 515/5(3) (West 2012). Additionally, the Act specifically states that "[a]ccess to information regarding deceased children by *** multidisciplinary and multiagency child death review teams is necessary for those teams to achieve their purposes and duties." 20 ILCS 515/5(7) (West 2012).

¶ 17    One Hope also contends that its priority review process must be kept confidential so that its staff will "freely and candidly" investigate problem cases, and informants will similarly share information with investigators, without fear that their remarks will be revealed outside of One Hope. As noted above, this argument resonates with the principles expressed in *Bredice*, but we believe the overriding need to determine the truth with respect to the cause of death of an infant overrides the desire of One Hope to keep its self-evaluations confidential.

¶ 18    One Hope also points out that section 8-2101 of the Code of Civil Procedure, commonly known as the Medical Studies Act (735 ILCS 5/8-2101 (West 2012)), protects against discovery of internal quality control documents in hospitals. However, by its very terms, that

law does not apply to institutions such as One Hope. Additionally, the *Rockford* court declined a similar invitation to adopt the Medical Studies Act privilege to disclosure required by other statutes by analogy. *Rockford*, 398 Ill. App. 3d at 153-54. While neither *Campobello* nor *Rockford* is squarely on point here, their analysis provides substantial support to our conclusion that the self-critical analysis privilege is not recognized in Illinois.

¶ 19    Absent the privilege, there is no dispute that the priority review report is discoverable, as it may contain information admissible at trial or lead to such information. Accordingly, the trial court correctly ordered One Hope to provide the plaintiff with the report. *Leeson v. State Farm Mutual Automobile Insurance Co.*, 190 Ill. App. 3d 359, 366 (1989).

¶ 20    For these reasons, we affirm the circuit court's order compelling production of the priority review report. However, the record reflects that One Hope showed no disdain for the court but that it refused to comply with its order in good faith to secure appellate interpretation of this rather novel issue. Therefore, we vacate the contempt order. *In re Marriage of Earlywine*, 2013 IL 114779, ¶ 36 (vacating contempt order entered under similar circumstances).

¶ 21                                    CONCLUSION

¶ 22    Accordingly, we affirm the judgment of the trial court that the documents should be produced but vacate the contempt order.

¶ 23    Affirmed in part and vacated in part.

- 6 -