2020 IL App (1st) 182464-U

SIXTH DIVISION
January 17, 2020

No. 1-18-2464

**NOTICE**: This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

| | | |
|---|---|---|
| *In re* the Marriage of: | ) | Appeal from the |
| | ) | Circuit Court of |
| LORRAINE WORMELY, | ) | Cook County. |
| | ) | |
| Petitioner/Counter-Respondent, | ) | |
| | ) | No. 16 D 9345 |
| v. | ) | |
| | ) | |
| WILLIAM RALLINS, III, | ) | Honorable |
| | ) | Robert W. Johnson, |
| Respondent/Counter-Petitioner. | ) | Judge Presiding. |

JUSTICE HARRIS delivered the judgment of the court.
Presiding Justice Mikva and Justice Connors concurred in judgment.

**ORDER**

¶ 1    *Held*:  Trial court ruling in dissolution of marriage case, following evidentiary hearing, was not against the manifest weight of the evidence.

¶ 2    This case concerns the dissolution of the marriage of petitioner/counter-respondent Lorraine Wormely and respondent/counter-petitioner William Rallins, III. On October 22, 2018, having already dissolved the marriage in May 2018, the circuit court entered orders (1) awarding maintenance, and half of the marital portion of Rallins's pension, to Wormely, and (2) awarding

attorney fees from Wormely to Badesch Abramovitch LLC ("Badesch"), her former counsel. Wormely appeals *pro se*, contending that the trial court acted unethically in this case. As explained below, we shall deem this *pro se* claim to be a contention that the judgment was against the manifest weight of the evidence. We affirm.

¶ 3                                    I. JURISDICTION

¶ 4     The petition for dissolution of marriage was filed in October 2016, and a counterpetition was filed in January 2018. The circuit court dissolved the marriage in an order of May 15, 2018. On October 22, 2018, the circuit court entered orders disposing of all pending issues. Wormely filed her notice of appeal on November 20, 2018. Accordingly, this court has jurisdiction over this matter pursuant to article VI, section 6 of the Illinois Constitution (Ill. Const. 1970, art. VI, § 6) and Illinois Supreme Court Rule 301 (eff. Feb. 1, 1994) and Rule 303 (eff. May 30, 2008).

¶ 5                                    II. BACKGROUND

¶ 6     Wormely, represented by Badesch, filed her petition for dissolution in October 2016. She and Rallins were married on June 17, 2006, and lived together until they separated in November 2011 due to irreconcilable differences. She was 52 and "presently unemployed," he was 63 and "employed full-time in a management position with United States Steel Corporation" ("Steel"), and they had no children together by birth or adoption. She alleged that "William has since the parties began living separately and apart provided financial support for Lorraine, and, on June 16, 2006, executed an agreement whereby he would pay her between $1,800.00 and $2,000.00 per month 'to cover living costs'. William has recently ceased to provide this support." She also alleged that they, "during the marriage, acquired certain marital property, including pensions and or retirement accounts through William's employment and other items of property known to

William, but unknown to Lorraine," and that she "through her efforts, frugalities, and work, contributed to the acquisition, preservation, and appreciation in value of the marital property." She alleged that they "acquired certain marital debts, and William should be responsible to pay these debts," and that she "lacks sufficient property and income to pay the attorney's fees and costs incurred by her in bringing this action, while William earns a substantial income and is well able to pay the attorney's fees and costs incurred by him and Lorraine in this matter." Wormely sought, in addition to a judgment of dissolution, a permanent award of maintenance to herself and none to Rallins, division of marital assets or the proceeds of their sale "in just proportions," allocation of the marital debt to Rallins, and that Rallins pay her attorney fees and costs.

¶ 7    Rallins appeared through counsel and answered in November 2016, agreeing to many of Wormely's background allegations including their irreconcilable differences. He admitted that "he was giving her money and recently stopped but denie[d] any agreement between the parties was intend to continue without limit." He denied that he was "an able-bodied individual who is gainfully employed and earns a substantial income that is sufficient to provide for his own maintenance and support" so that he should be barred from receiving maintenance. He demanded strict proof that Wormely "is unemployed, earns no income, and lacks sufficient property and income, including the contemplated apportionment of the marital property, to provide for her reasonable needs *** and she is without sufficient resources to meet her needs independently commensurate with the standard of living established during the marriage." He admitted that the parties acquired property but denied that property was "known to William, but unknown to Lorraine" and that she "through her efforts, frugalities, and work, contributed to the acquisition, preservation, and appreciation in value of the marital property." He denied that they "acquired

certain marital debts, and William should be responsible to pay these debts." Lastly, he denied that she had inadequate property and income to pay her counsel while he "earns a substantial income and is well able to pay the attorney's fees and costs incurred by him and Lorraine in this matter."

¶ 8                                    A. Initial Proceedings

¶ 9     Rallins filed a November 2016 financial affidavit averring that he worked for Steel, his 2016 gross income as of November 12 was $62,532.73, and his gross income in 2015 was $90,441. He disclosed credit card debt not exceeding $1500, tax debt totaling $25,000, and $2350 in attorney fees to his counsel in this case. He disclosed as assets bank accounts not exceeding $1700, a 2006 automobile, life insurance policies totaling $90,000, and a Steel pension.

¶ 10    In January 2017, the court entered an agreed temporary order expressly "resolving" motions by Wormely for temporary maintenance and interim attorney fees. Rallins was ordered to pay Wormely $1400 monthly in maintenance "without prejudice," and to pay Badesch $2500 in $250 monthly increments for Wormely's interim attorney fees and costs.

¶ 11                                   B. Attorney Fees

¶ 12    In July 2017, the court granted Badesch leave to withdraw as Wormely's counsel, and new counsel appeared for Wormely in August 2017. Also in August 2017, Badesch filed an attorney fee petition seeking $10,813.77 in fees and costs from Wormely. Badesch alleged that Wormely signed a representation agreement in September 2016 that Badesch would represent her for $300 per hour, which Badesch alleged to be "usual and customary." In February 2017, Badesch notified Wormely that its rate would thereafter be $325 hourly, which Badesch maintained to be "fair and reasonable" under the circumstances. Badesch also notified Wormely regularly of the work it performed, to a total of 51.2 hours, but she "refused, failed, or neglected to pay." The agreement

and rate increase notice were attached to the petition, as was the affidavit of Badesch attorney William McSurley that Badesch performed 51.2 hours of work for Wormely. The record on appeal does not include an itemized accounting, ledger, or similar document detailing such work.

¶ 13    Wormely responded to Badesch's fee petition, demanding strict proof of the amount of work Badesch performed and admitting that she did not pay but maintaining that she could not pay as she was at times unemployed or employed only part-time. She suggested that Badesch file a fee petition against Rallins instead. She alleged that Badesch received partial payments including a $200 consultation fee, $1500 retainer, and $2500 from Rallins, and she argued that Badesch should have withdrawn when the balance reached $5000 as their agreement set a $5000 balance ceiling.

¶ 14                                C. Counterpetition, Etc.

¶ 15    Rallins filed a counterpetition for dissolution in January 2018, seeking in addition to a judgment of dissolution a "proportionate" division of marital property, a "just and equitable" division of debts incurred during the marriage, and that neither party be awarded maintenance or attorney fees from the other. He described himself in the counterpetition as a "Laborer" for Steel.

¶ 16    Wormely answered the counterpetition in February 2018, alleging that Rallins "is in management" at Steel rather than being a laborer. Wormely alleged that Rallins "did not buy furnishings for the family," "caused the abandonment of certain vehicles owned by either parties for failure to either maintain or pay municipal fines," and "[a]ny items that [Rallins] may claim as marital in nature were abandoned by [him] and placed in storage, which has been solely paid for by" Wormely. She alleged that any debts in Rallins's name were solely his "as the parties always maintained separate accounts and never held any joint accounts." Wormely reiterated her prayers for maintenance and attorney fees from Rallins.

¶ 17    Rallins filed an April 2018 financial affidavit averring that he was still employed by Steel, his 2018 gross income as of April 16 was $23,846.53, and his 2017 gross income was $82,252.08. He disclosed credit card debt not exceeding $4200, tax debt of $14,000, a $1100 loan, and $5550 in attorney fees. He disclosed as assets bank accounts not exceeding $6100, a 1989 automobile, life insurance policies totaling $90,000, and a Steel pension.

¶ 18                                  D. Default

¶ 19    On May 15, 2018, the court found Wormely in default for failure to appear at a trial that day, scheduled by a March 2018 order, on the issue of maintenance. In prove-up of the default, Rallins testified that he was 65 and employed by Steel as a laborer and that Wormely was 54, employed, and residing in Arizona. In addition to testifying to their 2006 marriage, 2011 separation, irreconcilable differences, and to having no children together, Rallins testified that neither he nor Wormely owned any real estate and that they divided all personal property at their 2011 separation. Rallins waived any interest he may have in Wormely's pension or retirement plan and asked the court to bar her from his pension. Rallins agreed to pay his own attorney fees and asked the court to hold Wormely responsible for her attorney fees. Wormely's counsel declined to cross-examine Rallins. The court asked Rallins if he paid Wormely $1400 monthly temporary maintenance, and he replied that he did until "nine months ago" when she moved to Arizona without providing her new address to Rallins or his counsel. Rallins believed that Wormely could support herself.

¶ 20    The court issued a judgment of dissolution on May 15, 2018, reciting that the parties were married on June 17, 2006, lived together until November 2011, had no children by birth or adoption, and had lived apart due to irreconcilable differences. The judgment found that Rallins

paid Wormely $1400 monthly in temporary maintenance from the November 2011 separation "until the present date," that the parties own no real estate, and that each party was employed and "fully able to provide for" his or her "own support" so that neither required maintenance. In addition to dissolving the marriage, the judgment provided that neither party would thereafter receive maintenance, each party would retain the "previously distributed personal property" he or she possessed, each would pay the debts he or she had incurred, and each would pay his or her own attorney fees and costs without contribution from the other.

¶ 21    The court also granted Wormely's counsel leave to withdraw on May 15, 2018, finding that counsel had "advised *** Wormely of the date of trial" and that "Wormely *** advised [counsel] of her not wanting to travel to Chicago for trial."

¶ 22                    E. Motion to Set Aside Default

¶ 23    In June 2018, Wormely filed an appearance by new counsel and a motion to set aside the default. She alleged in the latter that she was living in Arizona, counsel did not provide her adequate notice of the May 2018 trial "with enough time to arrange travel from" Arizona, and she could not afford to travel to the trial because she was unemployed and Rallins was not paying the requisite temporary maintenance.

¶ 24    Rallins responded to the motion, demanding strict proof of its substantive allegations.

¶ 25    Wormely replied in support of her motion, alleging that Rallins did not make 14 months of maintenance payments totaling $19,600 despite testifying in May 2018 that he had. She also alleged that Rallins mispresented in his testimony that funds he paid her before the filing of the dissolution action were maintenance payments. Wormely alleged that she was entitled by statute

to 63 months of maintenance, or $84,000 at the $1400 rate in the agreed order, and that the May 2018 order "fail[ed] to address the issue of the parties['] retirement accounts."

¶ 26                                    F. Final Proceedings

¶ 27    The court heard Wormely's motion to set aside the default and Badesch's fee petition on October 22, 2018. Wormely's counsel spread of record the parties' agreement that Rallins pay Wormely $1400 monthly for 10 months until $14,000 was paid, and that Wormely would thereafter receive no maintenance. The parties also agreed that Wormely would receive 50 percent of the marital portion of Rallins's Steel pension, which the parties agreed to be eight years, and that Wormely would reserve the right to seek a lump sum of that pension award. Rallins and his counsel confirmed that this was the parties' agreement. Wormely asked to address the court, but the court noted that she was represented by counsel.

¶ 28    The court then turned to Badesch's fee petition, upon which no agreement had been reached. Under Badesch's examination, Wormely testified that she recognized the representation agreement with Badesch, she paid a $1500 retainer, Badesch represented her from September 2016 until its July 2017 withdrawal, and she received monthly billing statements from Badesch. Wormely made biweekly payments to Badesch under a payment plan, and Rallins had been ordered to pay $2500 to Badesch towards Wormely's fees. When shown Badesch's ledger of Wormely's account, she acknowledged that it showed charges until July 2017 of $14,027.60 and receipts of $4273.10 for a balance due of $10,813.77. Wormely also acknowledged that "there were a number of issues with Mr. Rallins turning over documents that [Wormely] needed to make financial decisions in this case."

¶ 29 On cross-examination, Wormely testified that she emailed Badesch in March 2017 requesting that it request a trial and closure of the case because Wormely could not afford to proceed. However, Badesch did not do so. Wormely complained to Badesch that McSurley, the attorney on her case, "was running the bill up" and she "didn't understand what he was doing," so she wanted a different attorney. Rallins had been refusing to produce certain documents but McSurley did not argue so to the court. "Instead, Mr. McSurley kept looking for what he said was missing money that I now believe to be the missing 401." Despite Wormely's complaints, McSurley told her that he would not step down from the case. (Badesch objected to the preceding sentence as hearsay, and the court sustained the objection over Wormely's counsel's argument that it was a statement by a party opponent.) Wormely testified that clauses in the agreement, providing that Badesch retained the right to withdraw if Wormely did not keep her account current and that the balance would not exceed $5000, meant to her that Badesch would withdraw if her balance exceeded $5000. However, the balance exceeded that point months before Badesch withdrew. Wormely paid $250 monthly to Badesch after paying the $1500 retainer.

¶ 30 When asked how much of her account she believed she should be liable for, Wormely testified "I don't know exactly what I should pay because I really don't know what went on in that case when Mr. McSurley was handling it," and that she asked Badesch to seek additional fees from Rallins once the $5000 threshold was reached but it did not. Wormely testified that she earned only $21,000 annually as of the hearing and that her income was "not steady" because she worked only part-time. "If I'm not getting maintenance *** I can't afford any more than a hundred a month. I can barely pay my bills." When Rallins did not pay maintenance or the interim attorney fees, Badesch withdrew instead of trying to enforce the maintenance and fee order against him.

¶ 31 On redirect examination, Wormely testified that she asked for Badesch to remove McSurley from the case verbally in a meeting, rather than in an email or letter. While Wormely maintained that Badesch had agreed that Wormely could request a new attorney, she acknowledged that said agreement was verbal and not included in the written representation agreement. Despite receiving further bills from Badesch, she never asked Badesch as a firm to withdraw as her counsel. She acknowledged having no other documentation corroborating that she complained to Badesch about the charges in her billing statements.

¶ 32 The parties stipulated that Rallins had not paid Badesch $1000 of the $2500 he was ordered to pay in January 2017.

¶ 33 Badesch argued that Wormely acknowledged that Rallins was not producing documents, so that Badesch's charges for addressing that circumstance were proper. Badesch argued that Wormely could afford to pay $100 monthly, and more while receiving the unpaid maintenance, towards the unpaid $10,813.77 balance. Wormely's counsel argued that this should not have been a $14,000 case given the parties' meager assets and requested that the court reduce Wormely's bill "to something that comports with what is usual and customary in this venue for a divorce where the parties have very little assets."

¶ 34 The court found that Badesch's "fees were reasonable and the work necessary."

¶ 35 The court issued two orders on October 22, 2018. One awarded Badesch $10,813.77 in attorney fees and costs from Wormely. The other order (a) directed Rallins to pay Wormely $14,000 maintenance over 10 months beginning November 1, 2018, (b) awarded Wormely 50 percent of the marital portion of Rallins's Steel pension, noting that the "marital portion of the pension is agreed to be 8 years," (c) provided that "if it is possible for Lorraine Wormely to obtain

a lump sum payment, from the pension, that she shall be able to," and (d) found that the parties were married from June 17, 2006, until May 15, 2018, when they "are considered divorced." The latter order also stated "[t]his matter is now settled and off call." This appeal timely followed.

¶ 36                                    III. ANALYSIS

¶ 37     On appeal, Wormely contends *pro se* that the trial court acted unethically by not more closely supervising Badesch, and particularly McSurley, in fully representing Wormely's interests. As explained below, we shall construe this as a contention that the court's orders of October 22, 2018, were against the manifest weight of the evidence.

¶ 38     Before proceeding to the merits of this case, we note that we have accepted it upon Wormely's *pro se* appellant brief alone, without an appellee brief from either Rallins or Badesch. We may review a case under such circumstances when the record is simple and the errors claimed in the appellant's brief are easily decided. *In re Marriage of Earlywine*, 2013 IL 114779, ¶ 13.

¶ 39                                  A. Judicial Ethics

¶ 40     Wormely contends *pro se* that the trial court acted unethically by not more closely supervising Badesch, and particularly McSurley, in properly representing her interests. However, except for the evidentiary hearing where Wormely claimed that Badesch and McSurley did not properly represent her, the only indication that any such claim was set before the trial court is a May 2018 letter in Wormely's exhibits. The letter is from Wormely to the trial court and precedes the May 2018 default judgment. In her letter, Wormely requested that the court act upon allegedly incomplete discovery from Rallins concerning marital assets, explained why she could not attend the upcoming trial, alleged unpaid maintenance, and alleged that McSurley did not present claims of Rallins's incomplete discovery to the court. Wormely also asked the court to order Rallins to

pay the attorney fees and costs sought by Badesch on the basis that those fees resulted from Rallins's refusal to comply.

¶ 41 Firstly, there is no indication that the letter to the trial court in Wormely's exhibits was in the record on appeal. The exhibits on appeal do not include material not included in the record on appeal. Ill. S. Ct. R. 342 (eff. Oct. 1, 2019). Moreover, accepting *arguendo* that the trial court did not act upon Wormely's claim that McSurley did not bring discovery issues to the court's attention, we see no impropriety by the court. As our supreme court has stated, Illinois discovery rules "contemplate that discovery will generally proceed without judicial intervention and that the great majority of discovery questions will be resolved by counsel themselves." *Williams v. A. E. Staley Manufacturing*, 83 Ill. 2d 559, 563 (1981). See also Ill. S. Ct. R. 201(k) (eff. July 1, 2014) ("[t]he parties shall facilitate discovery under these rules and shall make reasonable attempts to resolve differences over discovery.") In light of this clear policy weighing against court intervention in discovery disputes, we find that the court was not obligated by Wormely's letter to do an "end run" around her counsel and act upon her discovery claim. The other matters raised by Wormely were implicitly or explicitly addressed by the trial court in its October 2018 judgment and we shall consider them below in that light.

¶ 42 B. Manifest Weight

¶ 43 Where the circuit court conducts an evidentiary hearing, as was done here on October 22, 2018, we review whether the court's factual findings were against the manifest weight of the evidence and review any questions of law *de novo*. *Hites v. Waubonsee Community College*, 2018 IL App (2d) 170617, ¶ 51. A finding is against the manifest weight of the evidence only if the opposite conclusion is clearly evident or the finding is unreasonable, arbitrary, or not based on the

evidence presented. *Id.* We do not reweigh the evidence or substitute our judgment for the circuit court's credibility determinations, because the circuit court was in the best position to evaluate witness credibility. *Id*. ¶ 56.

¶ 44 Here, while Wormely is challenging the May 2018 default judgment and contending that her absence from the scheduled May 2018 trial was justified, we note that the trial court partially set aside the default judgment in its October 2018 orders by awarding Wormely past maintenance and half of the agreed marital portion of the Steel pension. Wormely's motion to set aside the default judgment was successful, as the court reopened substantive issues – maintenance and the Steel pension – that had been disposed of to her detriment in the default judgment. Similarly, while Wormely is contending that her maintenance is insufficient, Wormely's counsel informed the court in the October 2018 hearing of the parties' agreement that Wormely receive $14,000 in unpaid maintenance and not seek further maintenance. The October 2018 judgment was an agreed judgment regarding maintenance and the Steel pension. The only matter upon which the court reached a decision and issued a judgment in October 2018 after taking evidence was Badesch's fee petition.

¶ 45 After Wormely acknowledged the sums in Badesch's ledger of her account, she testified to her belief that Badesch performed excessive or unexplained work on her case. However, she was not specific about the amount of this allegedly excessive work. Also, she testified that Rallins was not forthcoming in discovery, which needed to be addressed by Badesch. It would not be against the manifest weight of the evidence for the trial court to have found that Badesch performed contested work on Wormely's case in efforts to resolve discovery issues before, or instead of, raising them in court. Stated another way, Badesch's fee petition is not rendered unreasonable or

excessive merely by Wormely's thwarted expectation or requests that discovery issues be resolved in court.

¶ 46    Moreover, the record on appeal does not include an accounting of the 51.2 hours of work that McSurley averred and Badesch claimed in the fee petition, though Badesch's ledger of Wormely's account was presented in the hearing. As we cannot determine from this record how much of Badesch's work was appropriate, we must presume that the trial court did not abuse its discretion in finding the work necessary and granting Badesch's full request for fees and costs. The appellant bears the burden of presenting a sufficiently complete record, and any doubts arising from an incomplete record are resolved against the appellant upon the presumption that the trial court's judgment conformed to the law and facts. *People v. Carter*, 2015 IL 117709, ¶ 19; *Corral v. Mervis Industries*, 217 Ill. 2d 144, 157 (2005). We find that it is not clearly evident from the hearing evidence that Badesch sought payment for excessive work as Wormely claims. In sum, we cannot conclude on this record that the trial court's grant of Badesch's fee request was unreasonable or arbitrary, nor that the opposite of that order – that Badesch's fee claim against Wormely should have been denied in whole or part – is clearly evident.

¶ 47                                  IV. CONCLUSION

¶ 48    Accordingly, we affirm the judgment of the circuit court.

¶ 49    Affirmed.